## WILLIAM PICKERING vs. JOSIAH FISK.

The courts of this state will not take cognizance of an official bond, executed in another state, for the purpose of enforcing it in a peculiar manner, unknown to the common law, directed by a statute of that state.

When such a bond is sued, for the benefit of a party who is not entitled to a remedy upon it at common law, the courts of this state will not sustain the action, upon the footing of a statute of the state, where the bond was executed, giving such action.

Such a statute relates to the remedy, as regulating judicial proceedings, and is local in its operation.

The question whether such an action can be sustained, relates to the remedy, and must be determined by the *lex fori.*

A court can sustain a suit on a foreign contract, only when it can enforce it agreeably to the rules of the common law.

No court will take cognizance of a matter which concerns the internal police of a foreign state.

This was an action on a penal bond, purporting to have been executed in the state of New-Hampshire, by the defendant, as surety for one Tarleton, and conditioned for the due execution by Tarleton of the office of sheriff of the county of Grafton in that state. The declaration was as follows:—

"To answer unto William Pickering, of, &c., treasurer of the state of New-Hampshire, successor in the office of treasurer of said state of New-Hampshire of Nathaniel

CHITTENDEN,
*January*,
1834.

Pickering
*vs.*
Fisk.

Gilman, Esq. of Exeter, in the county of Rockingham in said state, late treasurer of said state, in a plea that to the said William Pickering, treasurer as aforesaid, the said Josiah Fisk, render the sum of ten thousand dollars, which to the said William as such treasurer he owes, and from him unlawfully detains; for that the said Josiah Fisk, together with one William Tarleton and Asa Boynton, of Piermont, in the county of Grafton, and state of New-Hampshire, on the sixth day of June, one thousand eight hundred and nine, by their certain writing obligatory, dated the day and year last aforesaid, signed with their hands and sealed with their seals, and here ready in court to be seen, and acknowledged themselves, and each of them by himself, indebted to the said Nathaniel Gilman, treasurer, as aforesaid, to his successor in office, in the sum of ten thousand dollars, with a condition thereto annexed, in the words following : 'If the above bound William Tarleton shall well and faithfully discharge all the duties appertaining and incumbent on him as a sheriff for the county of Grafton, to which office he has been constituted and appointed, during the term which he shall hold said office, then his obligation shall be void and of no effect ;—otherwise to remain in full force and virtue.'

"And the said William avers that the said William Tarleton did not well and faithfully discharge the duties of his said office of sheriff, in this, to wit, that on the thirtieth day of August, one thousand eight hundred and eleven, the said William Tarleton, then sheriff as aforesaid, received for collection a certain writ of execution, in due form of law, in favor of one Jonathan Moore against one Samuel Albee, dated the twenty-sixth day of August, 1813, for fifty-six dollars ninety-eight cents damages, six dollars cost, with seventeen cents for said execution; yet the said William Tarleton, not regarding the duties of his said office, did not collect and return the said execution, by reason of which said Jonathan lost the benefit of his said execution, and a judgment has been recovered by the said Jonathan Moore against the said William Tarleton for such default, by the consideration of the circuit court of common pleas for the western circuit, holden at Haverhill, within and for the county of Grafton, on the second

CHITTENDEN,
January,
1834.
—
Pickering
vs.
Fisk.

Tuesday of September, 1813, for the sum of sixty-eight dollars forty-two cents damages, and eighteen dollars seventy-three cents cost of suit, which judgment remains in full force and effect, not paid nor satisfied; and the said Jonathan has been and still is wholly unable to collect the same of the said William Tarleton, by reason of the avoidance of the said William Tarleton; by reason of which an action has accrued to demand and have of the said Josiah the sum of ten thousand dollars above demanded; yet the said Josiah, though often requested and demanded, has ever refused and still does wholly refuse to pay the same and every part thereof, to the damage of the plaintiff, as such treasurer, as he says, ten thousand dollars; to recover which, with the said debt above demanded, this suit is brought."

To this the defendant pleaded ten several pleas, which it is not necessary here to notice, as the case turned upon the insufficiency of the declaration. The case was tried in the county court, September term, 1832; judgment was rendered for the defendant, and the case brought to this court by exception.

After argument by

  *Charles Adams for plaintiff*, and
  *Bates & Marsh for defendant*,

  The opinion of the court was pronounced by

PHELPS, J.—It is utterly impossible, from the very imperfect manner in which this case is presented by the bill of exceptions, to determine what view was taken of the case by the court below, or what questions of law, if any, were decided. All that can be gathered from the case as certified is, that upon the exhibition, by the plaintiff, of the record of a recovery by Moore against Tarleton, in the state of New-Hampshire, for the default in question, and in view of the pleadings the court rendered judgment for the defendant.

In the absence then of any question raised by the bill of exceptions, the case comes before us upon the pleadings alone; and the inquiry is, whether upon the face of these pleadings the judgment is erroneous. As all the pleas except the 3d, 4th and 8th, result in issues of fact, there is

CHITTENDEN,
January,
1834.

Pickering
vs.
Fisk.

no question arising upon them.    The 3d, 4th and 8th terminate in demurrer, and thus is put in issue the sufficiency of the declaration in the first instance, and, if that be sufficient, then in the second place the legal sufficiency of the several pleas.

Upon the face of the declaration the bond in question bears the character of an official bond, and to give it legal validity it must necessarily be predicated upon some legal requirement in force *in loco contractus*. Without such basis, the instrument is void.   It is also a settled rule, that courts do not *ex officio* take notice of the laws of a foreign sovereignty, but they are to be pleaded and proven as facts ; with this qualification, however, that they may be given in evidence, without being specially pleaded, like other matters of fact, in cases where the rules of pleading do not require the facts to be specifically set forth.  In this declaration, no law of New-Hampshire is alleged authorizing or requiring the proceeding.  Whether this omission is fatal to the declaration, is not perhaps necessary in this instance to be determined ; yet it would seem, that in declaring upon a foreign instrument of this kind, dependent upon some statutory provision for its legality and force, some averment of the kind is necessary to give to the instrument set forth an obligatory character.

Presuming however the existence of such a law, and waiving, for argument's sake, this objection, the question then arises, whether this declaration shows such a breach of the condition of the bond as entitles this plaintiff to recover.   Upon common law principles, and in the absence of any statutory provision, the plaintiff could only recover for such breaches of the terms of the condition as involved an injury to himself.   Nor is the ground readily discovered upon which he could appropriate to himself a compensation confessedly due to a stranger.   The equitable notion of a recovery in trust will not apply ; for it is necessary, to authorize such a proceeding, that there should be some privity between the parties upon which a trust may be predicated.   If Moore be considered as prosecutor, and real plaintiff, still the objection occurs, that he is not a party to the bond, has no legal interest in it, and of course can have no remedy upon it.   We nave no statute in this

14

CHITTENDEN,
January,
1834.
———
Pickering
vs.
Fisk.

state to aid this suit, and no statute of the state where this instrument originated is alleged to exist. There is therefore no breach here alleged, which, at common law, or by virtue of any known statute, would entitle the plaintiff to recover. The declaration for this reason is obviously insufficient.

The argument, however, has proceeded upon the assumption, that a statute exists in New-Hampshire which authorizes the sustaining this suit. This is doubtless so ; and should we rest here and determine the case upon a defect in the pleading alone, the result would be a re-pleader, and the case would probably present itself again for consideration. Under these circumstances, we have thought it proper to determine the question, upon which, as we suppose, the whole controversy rests.

Taking it as sufficiently apparent, that there is a statute law of the state of New-Hampshire, authorizing the prosecutor, Moore, to sustain a suit on this bond, in the name of the treasurer, for his own benefit, and to recover for the default complained of, can this court, consistently with established rules, regulate their proceedings by that statute, and sustain the suit in the same manner as the courts of New-Hampshire would do it?

This brings us to the question, how far the laws of that state are to govern us, in construing and enforcing this contract.

The law on this subject seems now to be settled, by common consent, so far, at least, as general rules are concerned ; although in the extensive and still increasing intercourse between different communities and nations, questions as to the application of these rules to particular transactions, and questions of extreme difficulty exist undetermined.

The capacity or legal competency of the parties to contract, is governed by the law of the place where the contract is made. To this there may be an exception, in the case of two citizens of the same community, who may be transiently in a foreign country, contracting there with each other, and seeking to enforce the contract in their domestic courts. In one case, (*Thompson* vs. *Ketchum*, 4 John.) it was held that the capacity of the party was determined by the law of the place where the contract was to

CHITTENDEN,
January,
1834.

Pickering
vs.
Fisk.

be performed.   This decision, however, was afterwards overruled, (see 8 John. Rep.) and it is difficult to perceive how the competency of the party to enter into a contract can be made to depend upon the particular place where it is to be performed.

As to the *requisites* of a valid contract, the mode of authentication, the forms and ceremonies required, and, in general, as to every thing which is necessary to perfect or consummate the contract, the *lex loci contractus* governs, though with respect to conveyances, or other contracts relating to real estate, the statutory regulations of the place where such estate is situated must be observed. The rule is the same as to the validity, obligation, interpretation, construction, requirements, and legal effect of the contract when perfected.   When, however, a contract made in one jusisdiction, is to be performed in another, the law of the latter governs as to the interpretation, requirements, and effect of the contract, as well as to the time, mode, and manner of performance ; and in some respects also as to its validity, as with respect to the statutes of usury, where the validity of the contract depends upon the legality of the performance.   This last rule is founded on the presumed intent of the parties, and is probably co-extensive, in its operation, with that which allows that intent to govern the contract.   But where the intent of the parties would be controled by law, the substitution of a foreign place of performance would not be admitted as an evasion of that restriction.

These rules, however, are to be taken as subject to a general qualification.   No sovereign state is bound by the laws of another, nor can the laws of another state operate *proprio vigore* within it.   The observance of foreign laws rests in comity and convenience, and in a disposition of courts to adapt their proceedings to the great ends of justice.   But there is a limit to this principle of comity ; and cases may and do arise, where the observance of foreign laws would neither beconvenient, nor answer the purposes of justice.   Foreign laws, therefore, are not regarded, where they are irreconcilable with our own regulations, nor where, in our opinion, they conflict with our established policy, or do violence to our views of religion or public

CHITTENDEN,
January,
1834.

Pickering
vs.
Fisk.

morals. A contract which has in view a violation of our revenue laws, although legal in a foreign country, where it might be concocted, will not be enforced here—nor a gaming contract, nor one which, by our laws, would be void as contaminated by indecency or irreligion.

When we come however to consider the *remedy* on a contract, with its various incidents, we are no longer governed by the *lex loci contractus*, but here the *lex fori* obtains. Every state regulates its own jurisprudence in its own way, as a part of its internal police, and with it, the forms and modes of judicial proceeding, as well as of enforcing judicial sentences. It has its own mode of enforcing rights and redressing wrongs; and whoever seeks either the one or the other in the courts of any state, must seek it in conformity with the mode of judicial action there established. This is a subject, not depending upon the compact of the parties, but wholly independent of it. And in this particular, we have to do with a matter not of conventional but of political arrangement. What the parties stipulated in their contract, is one thing—what are the powers of judicial tribunals, and in what manner they are competent to redress wrongs, is a very different enquiry. Hence every thing connected with the remedy has been uniformly held to fall within the *lex fori*.

What appropriately belongs to the contract, as a part of it, and what to the remedy, is a question not always so easy of solution; although in this case there is probably little difficulty on that point. Statutes of limitation, and statutes allowing set-off, are determined to appertain to the latter. So the form of the action, which is appropriate in a given case, is regulated by the *lex fori*. In some of the states, a scrowl is regarded as a seal, and in others not; yet it has been held that if an instrument thus authenticated, is executed in one of the former, and sued in one of the latter, the appropriate action is *assumpsit:* and this, although, by the *lex loci*, the instrument is a specialty. So it has been decided, that an assignee of a chose in action, who takes the assignment in a country where such choses are assignable, cannot maintain an action in that character, in the courts of a jurisdiction where they are not so. But on this point there are contradictory decisions.

CHITTENDEN,
*January,*
1834.

Pickering
*vs.*
Fisk.

These decisions go much farther than it is necessary to go in this case; for it has been uniformly held, that the form of the action, the mode of proceeding, and every thing relating to the mode and manner of obtaining a remedy by suit, is regulated and determined by the law of the place where the remedy is sought.

What then is the character of this statute? We understand it to provide, in substance, that these official bonds may be prosecuted in the name of the treasurer, but for the benefit of any person injured by an official default, and that the assignment of such default shall be a sufficient allegation of a breach. The statute further provides, that the judgment in such a suit shall not be a bar to a future suit on the bond, for other and different breaches. Now what is this but a statute regulating judicial proceedings? Is it not confined to authorizing their courts to proceed in a manner unknown to the common law, and to give redress in a new way? There is certainly nothing in this contract, which would authorize such a course of proceeding independent of the statute, no more than in an ordinary bond or note. Instead then of looking to the stipulations of the contract, for a basis upon which this course of proceeding may rest, we are to find it in a statute regulating the action of their tribunals, which, in its terms and character, is of local operation.

If any doubt exists on this subject, it may be remarked further, that the prosecutor (Moore) was not originally a party to the instrument, and had no more interest in it, in the outset, than any other citizen of New-Hampshire. The statute indeed gives him a remedy for an injury arising *ex post facto*, and this, not upon the ground of any original right in him, but as a mere mode of enforcing a faithful discharge of duty by a public functionary.

The statute of New-Hampshire, therefore, is not one of those laws which enter into and become incorporated with a contract, as a part of the contract itself; but is one relating exclusively to the remedy, and might be repealed, altered, or modified by the legislature at pleasure. And if repealed, the prosecutor's remedy is gone; for there is no pretence for holding, that the statute is so far identified with the contract, as to have even a posthumous operation upon it, after a repeal.

CHITTENDEN,
January,
1834.

Pickering
vs.
Fisk.

The basis of the argument, however, lies deeper still. It is to be found in the nature, object, and purposes of the bond itself. It is not a contract originating in the ordinary business transactions of men, created for private and individual purposes as evidence of private right. If it were such, it would be transitory as the persons of the contracting parties, and would be enforced in any jurisdiction where the legal obligation of contracts is recognized. It is a general rule, that courts of all civilized nations will enforce contracts executed in foreign states, where the parties are within their jurisdiction; and for this purpose, will have regard to the laws of the place where the contract may be made. The rule however has reference to those contracts, arising in the ordinary course of business transactions, which, conferring personal rights, and being entered into without reference to any particular local regulations, are of equal moral and equitable obligation, wherever the parties may be found. No state interferes with the internal police of another; nor will it enforce an obligation, entered into with a view to that police, and intended to have no operation except in connexion with it. The bond in question is not a mere personal contract. It is a security, taken in pursuance of the laws of New-Hampshire, for the purpose of securing a due and proper administration of their public affairs—given by a public officer, to guarantee a faithful execution of a public trust, executed to another public officer, not for his private benefit, but for the public security; and to be enforced, from time to time, by their own tribunals, and in the manner pointed out by the laws regulating the action of those tribunals, for the benefit of each and every citizen alike, who may be injured by an official default. It is a part of the internal police of the state—of the machinery by which she regulates her internal concerns, and protects her citizens from an undue or improper exercise of the powers vested in her own officers. Such an obligation is local in its nature, and is widely different from those contracts, which, having for their object private and individual interests alone, are enforceable every where.

It certainly never was contemplated by the legislature of that state, when it provided for this security, nor by the

parties to it, when it was executed, that it should be taken abroad, as evidence of a personal contract, to be enforced in other jurisdictions, in any and every manner, which their laws might warrant. If such proceeding were tolerated, it might, and probably would, result in giving to the contract a totally different effect and operation from that contemplated by the law of New-Hampshire, and intended by the parties.

CHITTENDEN,
January,
1834.

Pickering
vs.
Fisk.

That comity also, which leads us to adopt the laws of a sister state as our guide for the purpose of dispensing justice to her citizens, when asked at our hands, would in this instance forbid it. Should this suit be sustained, and a judgment rendered for the plaintiff, that judgment must extinguish the bond and all future remedy upon it. The statute of New-Hampshire, providing that a judgment on the bond shall not be conclusive, could have no effect upon a judgment of this court; and if our jurisdiction of the subject is admitted, our adjudication must be final and conclusive. The effect would be, that the security would be withdrawn from the jurisdiction of the courts of that state, and their citizens would be compelled to resort to the courts of this state for redress, in case of any subsequent breach; if indeed there be any law of this state which would enable us to afford it. The result would involve, not only an interference on our part with their internal police, but an interference tending to exclude the proper action of their own tribunals on the subject, and withdrawing altogether from them a matter exclusively within their cognizance.

The argument may be illustrated by taking the case of a probate bond, executed under our law, and supposing it put in suit in another state. If jurisdiction is assumed by a foreign court, it must proceed, either according to the course of the common law, or according to some regulation which might exist there, applicable to such cases. In one case, the security would be extinguished by a single instance of enforcing it, and, in the other, an operation and effect might be given to the security widely different from its original purpose and intent. And even if we admit that the proceeding might be made to conform to the provisions of our statute authorizing a *scire facias* from

CHITTENDEN,
January,
1834.

Pickering
vs.
Fisk.

time to time, in behalf of persons injured by successive breaches, still the objection would exist, in its full force, to suffering the security to be withdrawn from our jurisdiction, and compelling our citizens to resort to a foreign tribunal.

The practical operation of such a proceeding illustrates most forcibly the propriety of the rule, which confines every security of this character within the cognizance of the domestic tribunal.

We do not decide, nor ought it to be so understood, that no action can, under any circumstances, be sustained by us upon a bond of this kind, denominated official, executed in another state. There are doubtless many cases, where an action on such an instrument would be sustained. For instance, a bond for the liberties of a prison, executed under our law, might very properly be enforced in another state, although executed to the sheriff in his official capacity, and in that sense an official bond : And so *e converso*, a similar bond, executed abroad, would be enforced here. And even the bond in question might be enforced here, under certain circumstances. Supposing the sheriff to have purloined the funds of the state entrusted to his official care, and an action to be brought here, we might well treat the plaintiff as a trustee for the state, and permit a recovery. But in these cases, we merely give effect to the instrument as a contract recognized by the common law, agreeably to the rules and course of proceeding derived from that law. Wherever a bond, although taken in pursuance of a statutory provision, is left, as to its operation and effect, to be governed by common law rules, there can be no obstacle to enforcing it any where, like any other instrument of the kind. What we decide is this : when an official bond is, by the law of the state where it is executed, to have effect only in a particular way, and to be enforced only in a particular mode pointed out by those laws, the enforcing it in that mode, is the exclusive province of the tribunals of that state. In this instance, the person for whose benefit the suit is brought is a stranger to the bond, and, at common law, could sustain no action upon it. The statute of New-Hampshire, giving him a remedy, is a mere local regulation affecting the judicial proceed-

ings of that state. It is not directory to us, nor can we, consistently with established rules, assume the duty of enforcing it.

The result is, that the suit cannot be sustained. But as the decision of the court below might possibly embarrass the prosecutor, in case an action should be brought in the state of New-Hampshire, and as the difficulty is in reality a want of jurisdiction under the statute of New-Hampshire, we have thought it proper to reverse the judgment and dismiss the action.

Judgment reversed and suit dismissed accordingly.