JACOB DIMICK *v.* SAMUEL BROOKS.

In an action upon a bond, conditioned for the payment of a debt by instalments, brought in the state of New Hampshire, the plaintiff recovered judgment for the penalty of the bond, and execution was awarded for the amount of the first instalment, which had then become due. *Held*, that the judgment for the penalty did not create an absolute indebtedness against the defendant, which could be enforced in this state by an action of debt upon judgment, in common form, for the purpose of enforcing payment of the instalments subsequent to the first.

The judgment for the penalty of the bond, in such case, is a mere creature of the statute, having no force whatever, except in the very court where it is rendered, and will not, either by the law of New Hampshire, or of this state, serve as the foundation for an action of debt, either in the common form of debt upon judgment, or by setting forth in the declaration the rendition of the judgment, the award of execution for the breaches accrued, and the accruing of subsequent breaches.

In order to sustain an action of debt upon a judgment, or upon any matter of record, the obligation must result from the record itself, and must be shown by the record, without requiring averments of additional matter. The record must show a still subsisting obligation, perfect in its inception, and still unsatisfied.

*Quære*, Whether the courts of one state can give effect to the judgments of the courts of another state, by enforcing any of the collateral remedies, which the prevailing party may be entitled to have in the place where the judgment was rendered.

72

DEBT on a judgment recovered in the supreme court of New Hampshire, in Grafton county, November Term, 1818, in two counts.  In the first count the plaintiff declared, in common form, upon a judgment· for $1000, debt and damages, and for $20,52 costs.  In the second count the plaintiff declared on a judgment for $1000, alleging that it was recovered on the penalty of a bond, which was conditioned, that the defendant should pay to W. B. Bannister $900, with interest annually, specified in nine notes, executed by the plaintiff to Bannister, dated July 23, 1814, payable yearly on and after May 1, 1817, " and also save and keep harmless the said Dimick from all cost, trouble and expense, that might accrue to him from or by reason of said notes not being paid according to their tenor and effect ;" and that, it appearing that one of said notes only was then justly due and unpaid, it was therefore ordered by said court, that execution then issue for the sum then due on said note, being $121,76, and said costs, being $20,52 ; and that, after the execution of said bond, and after the rendition of said judgment, the defendant neglected to pay said notes, or to save harmless the plaintiff from the costs, trouble and expense, which accrued to him from said money not being paid by the·defendant to said Bannister, as the same from time to time became due, according to the tenor and effect of said notes; and that the plaintiff has been compelled, by reason of said neglect, to pay to said Bannister, since the rendition of said judgment, the amount of all said notes, according to the tenor thereof, and which the defendant has wholly neglected to pay ; and that said judgment still remains in force and unpaid, except as to the amount of said execution, so awarded by said court, which has been paid to the plaintiff.  This action was commenced in October, 1843.

To the first count the defendant pleaded,—1. *Nul tiel record,*— on which issue was joined to the court ;—2. (After craving *oyer* of the record and setting it forth,) that the defendant paid to the plaintiff the amount of the execution awarded ;—to which plea the plaintiff demurred.  To the second count the defendant pleaded,—1. That the action was not commenced within eight years after the rendition of said judgment, and that when said judgment was rendered, the defendant was within this state ;—to which plea the plaintiff demurred ;—2. That the action was not commenced within

eight years next after the rendition of said judgment, nor within eight years next after all the damage, which the plaintiff ever sustained, or which accrued to him by reason of said notes not being paid, according to their tenor and effect, was sustained by or had accrued to the plaintiff. To this plea the plaintiff replied, that before said notes became due, to wit, December 1, 1819, the defendant departed and removed from this state, and from the United States, to Canada, and there resided until within eight years before the commencement of this action. The defendant rejoined, that, after the said alleged departure and removal, the plaintiff was not farther damnified by reason of the non-payment of the notes, or any part thereof. To this rejoinder the plaintiff demurred. The record, offered in support of the issue under the plea of *nul tiel record*, was the same described in the second count in the declaration.

The county court, March Term, 1846,—REDFIELD, J., presiding,—adjudged, upon the plea of *nul tiel record*, that there was no such record, and also adjudged, that the first plea to the second count of the declaration was sufficient, and that the rejoinder to the replication to the second plea to the second count was sufficient, and rendered judgment for the defendant. Exceptions by plaintiff.

*J. Collamer* and *Tracy & Converse* for plaintiff.

It may be assumed as fully settled law, that in all cases, where there is a personal civil obligation, the same may be enforced against such person in any civil jurisdiction, where he may be found. In giving construction to the contract and ascertaining the nature and extent of the obligation, the law of the country, in which the contract was made, or the *lex loci contractus*, is regarded, not *as law*, but as a method of ascertaining the extent of the obligation. The manner of enforcing the obligation depends entirely on the law of the jurisdiction, where such proceedings for enforcing it are taken,—the *lex fori*. The former determines the *right*, the latter the *remedy*. It is therefore entirely untrue, that, because the *same remedy* cannot be given here, as in the state, or country, where the obligation was incurred, therefore none can be given. Municipal regulations and obligations of public relation are not mere matters *inter partes*, and constitute an exception to the general rule. Such

was the case of *Pickering* v. *Fisk*, 6 Vt. 102. It is true, that at one time it was supposed, that the form of the remedy, and especially the final proces, was qualified, or affected, by the *lex loci contractus* ; *Melan* v. *Fitz James*, 1 B. & P. 138 ; but this is now every where exploded. The *lex fori* regulates, alike, the *form* of the action, the *form* of the judgment, and the *form* and *effect* of the final process for its execution. Story's Confl. of Laws 475, §§ 567, 568. Ib. 478, § 571. Ib. 479, § 572. *Warren* v. *Lynch*, 5 Johns. 239. *Andrews* v. *Herriot*, 4 Cow. 508. *Hinckley* v. *Marean*, 3 Mason 88. *Pickering* v. *Fisk*, 6 Vt. 102.

That Brooks was under legal obligation to Dimick, by virtue of the judgment in New Hampshire, is most obvious. In that judgment the bond had become merged. The judgment stood in full force, to be pursued from time to time, as breaches in the condition of the bond transpired. The law of New Hampshire, as to the mode of proceeding on penal bonds, is much like that of other states, and all are substantially the statute of William III. Judgment is rendered for the penalty, the same as at common law ; but instead of the defendant resorting to chancery for relief, as before the statute, the breaches then existing are shown to the court, who issue execution for so much of the judgment, and then, by the very words of the statute, the judgment *remains in full force*, as security for subsequent breaches, which may be shown on *scire facias*, and execution issued from time to time, *pro tanto*. But there is but one judgment, and execution can never issue, so as to exceed that judgment in amount. In this case, after judgment, one breach was shown, and execution issued therefor and was paid, and this action is pursued only for the subsequent breaches. For this obligation can there be a remedy in Vermont ? and if so, what must be the form of that remedy ? *Scire facias* cannot be sustained, as that is confined to the court, which rendered the judgment and has the record thereof ; it is but a proceeding to procure the order of court for the issue of execution on the *existing judgment*. Should an execution for a part of such judgment be, on *scire facias*, ordered by the court to issue, and should not be paid, will any one insist, that debt on judgment could be any where sustained therefor, by itself, separate from the judgment itself ? All these, however, are but forms of *remedy*, modes of redress, confined to the place of judgment and

peculiar to it. What is the form of remedy here? Clearly the action of debt on judgment,—debt on that *one, only judgment,* which has been rendered in the case. In declaring on that judgment there is no more occasion to set out the subsequent proceedings, which appear on the record, than there would be, when declaring upon an ordinary judgment, to set out the issue of execution and the return of *nulla bona* thereon, which appear on the record. The fact, that the record shows more than the judgment, does not require it to be set out in the declaration.

If it be here insisted, that by this course the defendant, having judgment rendered against him on this judgment, is deprived of the privilege of having the court confined to issuing execution against him *only for the additional breaches,* as this action, being on judgment, and not on bond, is not within the statute, we answer, he must do what all men had to do at common law in such cases, before the statute of William III, that is, resort to chancery for relief. But this constitutes no objection to a judgment for the plaintiff, according to the course of the common law, which is the law of the court, except when changed by the statutes of the state.*

*H. Everett, O. P. Chandler* and *Washburn & Marsh* for defendant.

1. As to the plea of *nul tiel record,* the defendant insists, that the record offered is not, *per se,* evidence of the debt demanded, but is conclusive evidence, that the amount, for which execution was awarded, was the only existing debt, at the time of rendering the judgment. But on a default, or on *this* issue found for the plaintiff, the judgment, according to the common law, must follow the declaration, and be rendered for the whole sum demanded, with interest as damages; which this court cannot chancer. If the action had been brought in December, 1818, upon the failure to pay the note which fell due May 1, 1818, (and it would have lain then, as well as in 1843,) the judgment must have been the same. But

---

* The learned counsel also argued at length the question as to the statute of limitations, as did also the counsel for the defendant; but the case being decided by the court upon the question as to the sufficiency of the form of action, the other points made need not be noted.

it may be urged, that this might have been avoided by a plea, that the judgment was conditional by the law of New Hampshire, and stood only as security for farther breaches of the bond, &c., and that the defendant had kept the condition, &c. Such a plea would contradict the record, and would not be sustained by the rules of the common law. The defendant is not entitled to *oyer* of a record, nor does the bond form part of the record. He must, then, set forth the record at his peril; he must take the condition of the bond, as the plaintiff has chosen to place it on the record. It deprives the defendant of the plea of *nul tiel record*, unless he hazard the having an absolute judgment against him for the whole sum demanded. And on such pleadings a *conditional* judgment must be rendered;—under what law?

The effect of a foreign judgment can be none other here, than in the state where rendered. This not being a common law judgment, its effect must depend upon the law of New Hampshire. It is not a *debt* there; *Shepard* v. *Parker*, 2 N. H. 363; but stands as security for farther damages. The only remedy then, as in like cases here, is by *scire facias*, issuing from the court in which judgment was rendered.

2. The second plea to the first count, after *oyer*, sets forth payment of the execution awarded. The object of this plea is, to extinguish any debt apparent on the record. The demurrer to this plea opens the question of the sufficiency of the first count. Though the plaintiff was not bound to give *oyer*, yet, having given it, the record (as to this plea only) becomes a part of the declaration.

3. *As to the declaration.* The action of debt will not lie on a similar judgment, rendered in this state. It is a statute judgment, and can be enforced only according to its provisions. The remedy is local,—to the court in which the judgment is rendered. If it be a statute judgment, it cannot, on common law principles, be enforced here. *Pickering* v. *Fisk*, 6 Vt. 102. A *scire facias* would be one step nearer to the analogy of our laws; it would only require a naturalization of the judgment. The remedy by action on the bond, the judgment in New Hampshire *non obstante*, would be a less exceptionable remedy. In both cases the subsequent proceedings would be according to the course of our law, after legislating, to legalize such action. The form of the action is unknown to our

law,—*debt on the case on judgment.* It is extending the statute of this state to a judgment of another state, and enforcing it by a remedy unknown to the laws of either state.

What will be the *effect* of a judgment here, on the existing judgment in New Hampshire? Will it be a bar to future proceedings there? Suppose the action had been brought in 1818, on the non-payment of the *second* note; would it affect the remedy in New Hampshire on failure to pay the third note? What judgment is to be rendered?—a judgment for the whole $1000?—for the $1000, less by the execution awarded? — or for the plaintiff's actual damages?

But it may be urged, that unless the action be sustained, the plaintiff is without remedy, the defendant residing out of New Hampshire. But this objection applies in all cases, where the remedy is local,—as on sheriffs' and executors' bonds, bail bonds, bail on mesne process, trespass on the freehold, &c. It is to be presumed, that the laws of New Hampshire afford an adequate remedy on local judgments, against absentees. And on such awards of execution, debt, or *indebitatus assumpsit,* would lie in any state.

The opinion of the court was delivered by

REDFIELD, J. This is a case, which, so far as we are informed, has never occurred under the Federal Constitution. The object of the suit is, to enforce a bond with condition for the payment of a debt by instalments. The bond was executed in the state of New Hampshire, and there sued, after the first instalment fell due, and, under a statute provision similar to the English statute and that of this state and most of the other American states, judgment was entered, in the New Hampshire court, for the penalty of the bond, being $1000, and execution awarded for the first instalment,—which has been paid. This judgment was rendered so long ago as 1818, and the present suit was brought in 1843.

The declaration in the present case is *in debt* in two counts,—first, upon an *absolute judgment* for one thousand dollars,—secondly, setting forth all the facts in the case, and averring, that the other notes have become due, which, by the bond, it was the duty of the defendant to pay and indemnify the plaintiff from paying, and that they have not been paid by the defendant, whereby the plaintiff has been.

compelled to pay them. There is a multiplicity of pleading in the case, with reference to both counts, but ending in demurrers reaching back to both counts. Two important questions arise in the present case.

1. Whether this action of debt upon judgment will lie, in the form of either count, upon any such record, as described in the second count, and which is confessedly the only record, upon which the plaintiff expects to recover? This, if found for the defendant, is, of course, conclusive of the case.

2. Whether, if such declaration can be maintained upon any such state of facts, as disclosed in the case, the claim is barred by the statute of limitations?

. In regard to the first question, we have certainly felt disposed to get over it, if it could be done consistently with established forms, as courts always do merely formal exceptions. But we have encountered difficulties, which to us have seemed insurmountable. The form of the action is merely and simply debt upon judgment. And the counsel, whose advice and argument have been chiefly relied upon, we are told at the bar, and whose written argument we have read with care and interest, have placed the case, almost exclusively, upon the first count, treating the judgment for the penalty as an absolute debt. But in our apprehension, although this view of the case is the only one, which goes clear of serious technical objections, it is in no sense maintainable. It is giving a force and extension to the contract, which it was never intended to have, and which it never could have, by the *lex loci.* It is, in every sense, a misdescription of the contract. A contract with condition, or in the alternative, (with the exception of a penal bond, which rests upon peculiar grounds,) must be truly described, setting forth its conditions. If this case be treated as an absolute judgment *at law,* now, so might it have been six months after its rendition, and thus have compelled the defendant to go into chancery to enjoin a suit upon his contract, before it fell due, and leave him entirely remediless *at law.* This, if not a violation of the United States' Constitution, by impairing the obligation of the contract, is certainly a violation of the very first principles of moral justice, by giving to the defendant's contract a force, and extension, which it was never intended to have, and which by the *lex loci* it never could have had,

and depriving him of a defence, which, by the law of the place of contract, he was entitled to insist upon in any suit upon the judgment. Much more might be said upon this point; but we deem it unnecessary.

2. Upon the point, whether this action could be sustained upon the second count, we have entertained more doubt. There seems to be a justice and propriety, that the plaintiff should have the same or an equivalent redress, upon his contract, in all the states of the Union. Art. 4, sec. 1, of the Constitution of the United States, in terms, provides, that "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. And Congress may, by general laws, prescribe the manner, in which such acts, records and judicial proceedings shall be proved, *and the effect thereof.*" This Congress have done, at a very early date, 1790, and have, in express terms, provided, that such "proceedings shall have such faith and credit given to them in every court, within the United States, as they have by law, or usage, in the courts of the state from whence the said records are or shall be taken." This, taken in its most unlimited sense, might require us to allow a writ of *scire facias* upon all judgments coming here to be enforced from any of the other states of the Union. But even that will not require us to allow an action of debt, unless such is the effect in New Hampshire. And the contrary has been expressly decided there. In *Pierce* v. *Read et al.*, 2 N. H. 363, RICHARDSON, Ch. J., in giving judgment in the case, says, "At the December "Term of this court, 1814, in the case of *Mary Shepard* v. *Edmund* "*Parker*, it was decided, that debt did not lie upon a judgment, "rendered for the penalty of a bond, in pursuance of this clause of "the statute, [having before set it forth *in hæc verba.*] The "grounds of such decision were, that such a judgment was the *mere* "*creature of the statute*, rendered, not for the purpose of being en- "forced by execution, or an action of debt, but to stand as a secu- "rity for any damages resulting from any future breaches of the "condition of the bond, and to be liquidated upon a *scire facias* "brought for that purpose." In the principal case before the court it was held, that debt will not lie upon a bail bond, taken upon *mesne* process.

The New Hampshire statute, like our own, and like the English

73

statute, provides, that, in all suits upon bond with penalty, the court shall enter up judgment for the penalty, and issue execution for the damages already accrued. "And the plaintiff may at any time " afterwards have *from the court, where such judgment was rendered,* " a writ of *scire facias* against the defendant, to show cause, why " execution should not be awarded upon said judgment for other and " farther damages." This judgment, for its construction, force and validity, must depend upon the law of the place of contract; and that, we have seen, is effectually settled, by the solemn determination of the court of last resort. And we find no ground to question the perfect soundness of that determination, upon general principles, applicable to the subject. We entertain no doubt, such is the law of this state.

We must, then, give this judgment an effect, which it has not in the place where rendered, and would not have, if rendered in this state, in order to sustain this action, in its present form. This would certainly not comport with the general principles of the law, applicable to the subject, and would be a needless extension of the remedy, unless it were clearly made to appear, that the party is otherwise altogether remediless. It would certainly be going quite beyond the range of the United States' Constitution and statute, upon this subject.

But upon general principles and sound analogy it seems to us, there is no good reason for allowing this action of debt upon this record. It is of the very essence of debt upon judgment, or upon any matter of record, that the obligation should result from the record itself. The record imports absolute and *complete* verity. It is neither to be increased, nor diminished, by any averment, *out of* or *beyond* the record. It is to the record, as the law and the testimony, upon which the pleader refers his claim. The record is formally vouched, in the conclusion of the declaration, as the basis of the claim. The defendant may crave *oyer* of the record and have it set forth in terms, as part of the pleading, and, if it do not sustain and *fully* sustain the declaration, may demur.

But in the present case the plaintiff's claim to recover of the defendant rests mainly *in pais*. It has to be made out by averments, in addition to the record, and of facts which have, in the very nature of the case, transpired since the former adjudication. So that the

claim, so far from being matter of record, rests mainly *in pais;* and if denied, instead of being determined by the court, upon inspection of the record, which is the only mode of trying matters of record, it must be determined by the jury, upon the testimony of witnesses. We believe it will be found to be an universal rule, in regard to the action of debt upon any matter of record, that the record itself must show a still subsisting obligation, perfect in its inception, and still unsatisfied.

But the plaintiff's claim seems to us, so far as the judgment for the penalty of the bond is concerned, to be precisely the same, in every other *forum,* as if no such judgment had ever been rendered. That adjudication seems to be a mere creature of the statute, and having no force whatever, except in the very court where rendered. For all other purposes it is a mere nullity. It is impossible for any other tribunal, with the least show of regard to established precedent, to take up the matter at the point where the former proceeding left it, and carry it out. We might, with the same propriety, entertain a petition for a new trial, a writ of error, an *audita querela,* or a *scire facias* against bail, as to attempt to carry into effect this merely inchoate proceeding of the New Hampshire courts. And if we were to attempt it, it would be more consistent to do it by *scire facias,* or petition, than by an action of debt. The judgment for the whole penalty was *mere form,* and may be done again and again, in every successive suit upon the bond, as new breaches accrue, and no more embarrass the plaintiff, than if the bond were a single bond of indemnity, without penalty. The penal portion of the bond is mere form, and may be omitted altogether, and so is the adjudication upon it. The judgment in the New Hampshire court was for the damages then accrued, and concluded nothing more, and merged nothing more. The bond, as to all the other obligations, beyond the courts of New Hampshire, remained the same as before. It is, at most, the mere pendency of a suit in that state,—which is not even matter of abatement to a fresh suit brought here.

And it is questionable in my mind, whether the courts of one state can give effect to the judgments of the courts of another state, by enforcing any of the *collateral remedies,* which the prevailing party may be entitled to have in the place where the judgment was rendered. Hence, I conclude, that *scire facias,* or debt, upon re-

cognizances of bail, or *scire facias* against bail on *mesne* process, and suits against receiptors of property, and upon replevin bonds, or against sheriffs, for neglect of duty, are confined to the local jurisdiction. This seems to be the principle of the decision in *Pickering* v. *Fisk*, 6 Vt. 102. Prison bonds and warrants of attorney to confess judgment would also, very likely, be limited in their operation to the jurisdiction where executed. It is clear, that *scire facias* must be confined to the court having the record.

But it is needless farther to discuss this very obvious question. It is in vain to treat this, as in any sense a judgment, importing an obligation, upon which to found an action of debt. It is, at most, an inchoate proceeding, the mere pendency of an action. It is in no sense a more perfect judgment than a default, or judgment upon demurrer, where no damages have been assessed, and where they rest *in pais*, and depend upon proof, to be adduced in court. In such case, which is certainly stronger for the plaintiff than the present, it would seem absurd to claim, that a court in another state, or indeed any other court, could perfect the judgment. We might as well expect, that if a defendant leaves one state and goes into another, after the service of process upon him, the court of the latter state will take up the proceedings at that very stage, and perfect the judgment.

The judgment upon these pleadings must be for defendant.

Leave was granted to amend, upon terms of paying all costs to the time of amendment and taking no costs before that time.