AUGUSTUS FISK AND HERMAN C. FISHER *v.* WILLIAM C. BRACKETT.

*Action. Insolvent laws. Chose in action. Conflict of laws.*

The assignee, under the insolvent laws of another State, of a non-negotiable *chose in action,* cannot maintain an action upon it in this State in his own name, notwithstanding the laws of such State expressly provide that he may do so, and though all the parties reside there.

ASSUMPSIT for goods sold and delivered. The plaintiffs were the assignees, under the insolvent laws of Massachusetts, of Arthur Stowell, who was a citizen of that State, and who, prior to his insolvency, sold the goods in question, in Massachusetts, to the defendant, who then, and at the time of the appointment of the plaintiffs as Stowell's assignees, was also resident there.

The facts that Stowell was declared an insolvent under the laws of Massachusetts, that the plaintiffs were duly appointed his assignees under such laws, and that all his effects, including this claim against the defendant, were assigned to them by the commissioner of insolvency in Massachusetts, were all duly proved.

The plaintiffs also proved that by the laws of Massachusetts the assignees of insolvents are expressly empowered to maintain actions in their own name upon all the *choses in action* of the insolvent.

The defendant claimed that the plaintiffs could not maintain this action in their own name, but the county court, at the November adjourned Term, — REDFIELD, Ch. J., presiding, — held otherwise, and rendered judgment for the plaintiffs for the amount of their claim, to which the defendant excepted.

*Washburn & Marsh*, for the defendant.

*E. Hutchinson*, for the plaintiffs.

POLAND, J. There is no subject upon which greater conflict and confusion exists, both in the decisions of courts and among elementary writers, than upon the legal effect of an assignment under the bankrupt or insolvent laws of a country, upon the property of the bankrupt or insolvent in another jurisdiction. But in the present case it does not become necessary at al to enter into this extensive field of legal discussion, for at the time this debt was contracted the defendant and the insolvent were both residents of Massachusetts; the debt was contracted there, and all the parties continued to be residents of that State up to and after the time of the proceedings in insolvency, and the transfer of the effects of the insolvent to the plaintiffs under those pro-

ceedings. No question is now made as to the regularity of those proceedings under the insolvency laws of Massachusetts, nor as to the sufficiency of the proof of them, upon the trial in the county court. The right of the several States to pass such laws, and thus divest the insolvent of all his property, and vest the same in the assignees, in cases properly within their jurisdiction, is now fully established, and is not questioned here. The plaintiffs, then, by virtue of these proceedings in Massachusetts, became entitled to this debt against the defendant, and to recover it for the purpose of distributing it with the other assets of the insolvent among his creditors. Nor is there any question made but that, as against the defendant, the plaintiffs have the right, in some form, in our courts, to a legal remedy to enforce collection of the debt. In Massachusetts, by force of their statute, the plaintiffs would be entitled to sue in their own names. This brings us to the single question presented by the case : can these plaintiffs maintain an action in our courts to recover this debt in their own names ? An assignment of such a chose in action, not negotiable by the law merchant in this State, would not enable the assignee to sue in his own name, though his rights would be regarded and protected by our courts. Any legal proceedings to enforce payment of the debt must be in the name of the assignor, but the assignee would be allowed to control and manage the suit, and collect the judgment against any interference by the assignor. If, then, the plaintiffs can sue in their own names, it is wholly by force of the statute of Massachusetts. The plaintiffs' counsel does not claim that the laws of Massachusetts have any force, as such, beyond the territorial limits of that State, but insists that as the transfer of this debt to the plaintiffs was valid by the laws of that State, and as one of the incidents of that transfer was to give the plaintiffs a right to sue in their own names in that State, that the same legal effect should be given to it in this State. On the other hand, it is insisted by the defendant that this is not a matter pertaining to the right of the plaintiffs under the assignment, but relates wholly to the form of the remedy, and that though the courts of this State should regard the rights of the plaintiffs fully to recover this debt, still, that they should be required to pursue the forms of remedy provided

by the laws of this State, and not those of the State of Massachusetts. The general rules laid down in the books and cases, as to what law is to govern in determining the validity, obligation, construction and effect of the contract, and what shall govern as to the form of the remedy to enforce it, are uniform; the *lex loci* regulates the former, and the *lex fori* the latter. The only difficulty arises in the application of the rules in determining to which class this question belongs. It appears to us that there is some impropriety in likening this transfer to a case of a transfer by contract between the parties, so as to bring it within this rule. The reason given why a contract between parties is to be construed by the law of the place where it is made, is, that the parties are presumed to have contracted in reference to it, and intended to be governed by it. But this transfer was not made by any consent of parties; it was by a proceeding wholly *in invitum*, and though legally valid and binding, it rests wholly upon the strength of legal enactment. In some of the numerous cases where the effect of bankrupt assignments have been discussed, it is said that such transfers, made by virtue of the laws of the State, have the presumed assent of the bankrupt, because he is a citizen of the State and owes obedience to its laws; but in many others of these cases any such presumption is denied. We deem it of no importance to examine this legal abstraction.

Does it follow that a transfer of a chose in action in our State, by the act and assent of the parties, is to have all the legal effects and incidents in every other State, that it might be entitled to where made? Suppose that in Massachusetts there should exist a law enabling the assignee of any chose in action to sue upon it in the courts of that State in his own name, would that authorize such assignee of a debt not negotiable by the laws of this State, to maintain an action upon it in our courts in his own name? It seems to us that it would not, any more than it would entitle him to adopt some particular form of action given by the laws of that State, but not known to our law. That the plaintiffs would be entitled to sue here in their own names for the recovery of property the title to which vested in them by the assignment, we do not doubt, for such would be the legal effect and legal remedy

Fisk et al. *v.* Brackett.

given by our law to the transfer of the title to personal property.

But it seems to us quite another thing to authorize them to sue in their own names upon a contract of the insolvent here, by virtue of the statute of Massachusetts. The distinction we think is plain and clear. The real owner of a note or bond, made to another, not negotiable, or not legally assigned, might maintain trover for the conversion of it, but if he wished to enforce payment by the maker or obligor, he must sue in the name of the payee or obligee. We have felt every inclination to get over this objection, if possible, for it is merely technical, but we are satisfied that, upon principle, the right to sue by the plaintiffs in their own names exists only by force of the statute of Massachusetts, and cannot be regarded as operative beyond the territorial force of the statute, and that in this State we can give no other force to the assignment than to any legal assignment of the same debt here, and that the remedy must be pursued here in the name of the assignor. The case of *Pickering* v. *Fisk,* 6 Vt. 102, seems fully to support this conclusion. That was an action upon a bond given by the defendant, as sheriff of the county of Grafton, New Hampshire, to the treasurer of the State, for the faithful and due execution of his office, and setting forth a breach of duty by the defendant, as sheriff, in not collecting and returning an, execution in favor of one Moore. It was conceded that by the statutes of New Hampshire such an action could be sustained there, but it was held not to lie in this State. The whole subject is most ably examined and elucidated in the opinion given by PHELPS, J.

The very point here raised has often been before the courts in this country, and from the examination we have been able to give to it, we think the great balance of judicial opinion is adverse to the maintenance of such action in the name of the foreign assignee.

In *Orr et al.* v. *Amory,* 11 Mass. 25, it was decided that the assignees of an insolvent debtor in Pennsylvania, could not maintain an action in their own names against a debtor of the assignor in Massachusetts.

In *Bird et al.* v. *Caritat,* 2 Johns. 342, it was held that an action in the name of an English bankrupt was properly brought,

instead of being brought in the name of his assignees. In the opinion given by KENT, Ch. J., it is said that the courts here will give effect to the title of the foreign assignees, but that the mode of proceeding must be governed by the law of the place where the suit is brought, and as the debt was not assignable at common law, nor by the law of New York, the assignees could not sue in their own names.

So in *Raymond* v. *Johnson*, 11 Johns. 488, the plaintiff had become an insolvent under the insolvent law of New Jersey, but it was held that this action in New York was properly brought in his name, and not in the name of his assignee.

The same doctrine is laid down in Merrick's estate, 5 W. & Sergt. 9, and incidentally stated in many other cases.

This whole subject is fully examined by Judge STORY in his Conflict of Laws, and all the authorities collected and examined. He says, sec. 565, "and this rule (that choses in action are not assignable) is applied to assignments of choses in action, made in foreign countries, although the assignee might be entitled to found an action thereon in such foreign country in his own name, in virtue of such assignment. For such have been thought to belong not so much to the right and merit of the claim as to the form of the remedy. Thus it has been held that a Scotch assignee of a bankrupt could not maintain a suit in his own name in England for a chose in action of the bankrupt, which was admitted to pass under the assignment. In America, contradictory decisions have been made upon the same point, some decisions affirming and others denying the right of the assignee to sue in his own name, though the weight of authority must now be admitted to be against the right." But by an examination of the cases cited by Judge STORY to this section, I do not find any case where it has been decided that such foreign assignee can maintain an action at law here in his own name.

It is said by judges in many of the cases, that our courts will respect the rights of the foreign assignee, and that he will be permitted to sue in our courts, &c., but generally all these *dicta* occur, where the general effect of such foreign assignment was under consideration, and whether the foreign assignee had here any rights under it, and not where any question arose as to the

form in which·his remedy must be pursued. Such generally are the cases which the industrious examination of the plaintiff's counsel has brought to our attention. We are not aware of any case in this country where the foreign assignee has been allowed to sustain an action at law in his own name on a non-assignable chose in action due the bankrupt. The only English case which seems to warrant such an action is *O' Callaghan* v. *Thomand*, 3. Taunt. 82, where it is said that the court held that the assignee of an Irish judgment, (which is assignable in Ireland) could maintain an action in his own name in England. On an exam-. ination of that case it does not appear very distinctly what was decided, though the court intimated such an opinion. But Judge STORY says of this case " that it seems to stand alone, and therefore can scarcely be thought unexceptionable in point of authority." He quotes *Folliott* v. *Ogden*, 1 H. Bl. 135, and *Wolf* v. *Oxholm*, 6 M. & S. 99, as opposed to it. The case of *Jeffrey* v. *McTaggart*, 6 M. & S. 126, the case of the Scotch assignee, seems directly opposed to it.

There are many other cases which support the same general view of what pertains to the remedy merely, and therefore governed by the law of the forum.

In New York it has been held that a note in form negotiable, executed in Connecticut, (by the law of which State such note could not be negotiated so as to entitle the assignee to sue in his own name there,) might be sued in the name of the endorsee in the courts of New York.

So in the same State it has been held that upon an instrument executed in Virginia, having a scroll in the place of a seal, and which by the law of Virginia is equivalent to a seal; the action must be brought upon it as a simple contract; *Warren* v. *Lynch*, 5 Johnson, 239.

A similar decision was made in New Hampshire; *Douglass* v. *Oldham*, 6 N. H. 150.

The same principle has been decided in Maryland; *Thrasher* v. *Everhart*, 3 Gill & Johns. 234.

The judgment below we regard therefore as erroneous, and the same is reversed and the case remanded.