MARCELLUS B. SMITH *et al.*, Plaintiffs in Error, *v.* JOHN HUGHES, Defendant in Error.

ERROR TO THE SUPERIOR COURT OF CHICAGO.

A levy upon personal property, of sufficient value to discharge the execution, is a satisfaction of the judgment.

An officer making a levy, is bound for the property, unless the defendant shall give a satisfactory delivery bond.

Smith et al. *v.* Hughes.

A plaintiff, after he has made a levy, cannot change it, except with the consent of the defendant—nor can the officer making the levy, change it of his own accord.

Should a defendant prevent the sale of property levied on, then the officer might make another levy.

The court may remove a levy; otherwise it can only be removed by sale.

Where a levy has been changed, the plaintiff must show by a preponderance of evidence, that the defendant consented.

IT was agreed that a case between the said plaintiffs and Stephen T. Napper, should be decided, by the court, on the same state of facts.

The record shows the recovery of a judgment in favor of plaintiffs in error, against the above-named John Hughes, and one S. S. Hughes, on the 9th day of July, A. D. 1858, for damages and costs, $151.71; that on the 2nd day of July, A. D. 1859, they issued execution thereon, directed to the sheriff of Jo Daviess county.

That said execution has the following indorsements thereon:

This execution came to hand for collection this 5th day of July, A. D. 1859, at 8 o'clock A. M.          J. H. CONLEE, Sheriff.

By virtue of the within execution, I have levied on one black horse, one two-horse wagon, 20 acres more or less of corn, 5 acres of wheat more or less, one acre of potatoes more or less, as the property of John Hughes, defendant in said execution.          J. H. CONLEE, Sheriff.

*July 6th*, 1859.          Per J. M. CONLEE, Deputy.

This above property is ordered to be released by order of plaintiffs' attorney, this 18th day of August, 1859.          J. H. CONLEE, Sheriff.

F. By virtue of the within execution, I have, this 18th day of August, 1859, levied upon the following described lands described as follows, to wit: The east half of the south-east quarter of Section number twenty-six, in Township number twenty-nine north, Range two east of the fourth principal meridian, in the county of Jo Daviess, and State of Illinois.

E. S. Smith, attorney for plaintiffs, paid to me the necessary amount of money to redeem the said property, before sold upon another execution.

         J. H. CONLEE, Sheriff.

Galena, Nov. 4th, 1859.—By order of Walter Kimball, clerk of the Superior Court of Chicago, all proceedings are stayed on the within execution, and the same is returned to said court.

At the September term of said court, said John Hughes made his motion to quash and set aside said last-mentioned levy upon said real estate, for following reasons:

1st. That said first named execution was levied upon the growing crops upon said lands, and upon a certain horse and two-horse wagon, a copy of which said levy is as follows, viz.:

Smith et al. *v.* Hughes.

By virtue of the within execution, I have levied upon one black horse, one two-horse wagon, 20 acres more or less of corn, 5 acres of wheat more or less, one acre of potatoes more or less, as the property of John Hughes, defendant in said execution.                                        J. H. CONLEE, Sheriff.
  *July 6th*, 1859.                              Per J. M. CONLEE, Deputy.

The above property is ordered to be released by order of plaintiffs' attorney, and which chattels were surrendered to the same by the defendant, John Hughes, and which said property was and is of value sufficient fully to pay and satisfy the debt, interest, and costs due.

2nd.   Said levy has never been released by said defendants, nor has the same been done with their approbation and consent, but the same remains in full force, and binding until the sale of said property to satisfy the said execution.

3rd.   Said second named execution was paid and satisfied in full by said sale of said lands.

One Stephen T. Napper, as purchaser under a previous sheriff's sale, appeared and made a motion to set aside redemption of and levy upon said real estate, upon same grounds and affidavits.   To maintain their motion, the said defendants introduced first, the affidavit of John H. Conlee, sheriff of Jo Daviess county, dated 2nd day of September, A. D. 1859, which states that he is the sheriff of Jo Daviess county; that he made the various returns and levies upon the execution in favor of plaintiffs in error, against the said Hughes, and that they are all correct, a copy of which execution and return is attached to said affidavit; that the levies and release were made as therein set forth; that the personal property levied upon first, and released by order of plaintiffs' attorney, would have sold at public sale for enough, in his opinion, to have satisfied the said execution.   He also states that on the same day, the 18th of August, 1859, he received for collection, an execution in favor of Samuel S. Strecter, against the said John Hughes, for the sum of $618.92; that said execution was issued from the Circuit Court of Cook county, upon a judgment rendered on the 5th day of October, A. D. 1859, by virtue of which he levied upon the same lands of said Hughes, a copy of which executions and indorsements and levy are attached to said affidavit; that E. S. Smith, as attorney for said plaintiff in last-mentioned execution, paid him, said sheriff, a sum of money sufficient to redeem said land from a previous sale.

Also, the affidavit of said John Hughes, of date September 2nd, 1859, who swears that he is one of the defendants in execution in favor of plaintiffs in error; that the levy upon the personal property was made as mentioned in return of sheriff, and that the said personal property was his own; that he

Smith et al. *v.* Hughes.

turned it out to the sheriff, and that he, said affiant, did not at the time, nor does he now consent that said levy upon said personal property be released.

Also, the affidavit of said Stephen T. Napper, which states that affiant is well acquainted with the said Hughes, and with the personal property levied upon by virtue of said execution in favor of plaintiffs in error, and that the same, in his opinion, would sell at public sale for sufficient to satisfy said execution in full.

Also, the affidavit of J. M. Conlee, that he was well acquainted with the personal property levied on by virtue of the execution in question, and that, in his opinion, it would sell for enough, at public sale, to satisfy the same in full.

Also, the joint affidavit of J. H. Vaughn, H. S. Dering, F. C. Manpin, of date September 2nd, 1859, which states that each knows both of the Hughes, and the personal property levied upon by virtue of said execution in favor of plaintiffs in error, and that, in their opinion, said property, at public sale, would satisfy said execution in full.

Also, the further affidavit of Stephen T. Napper, of date September 10th, 1859, which states that the real estate levied upon by the sheriff of Jo Daviess county, was, on the 18th day of May, A. D. 1858, sold by Simeon K. Miner, then sheriff of Jo Daviess county, upon a special writ of execution from the Circuit Court of said county, upon a decree of foreclosure against the said premises, and that said Napper, being the highest bidder therefor, upon such sale, became the purchaser thereof for the sum of $1,370.66, and refers to the records of said county for the judgment; that he received from said sheriff a certificate of purchase in due form, a copy whereof is attached to said affidavit, by virtue of which sale, purchase and certificate, he would be entitled to a deed on the 18th day of August, unless said premises should be redeemed according to law.

And also, the further affidavit of James M. Conlee, sheriff, of of date September 10th, 1859, which repeats the facts of the levy upon said personal property of said John Hughes, upon the said execution in favor of plaintiffs in error; that said levy was made on the 6th day of July, 1859, and the said property was left by deponent with the said John Hughes, for the reason that the crops levied on were still growing and standing at the date of the levy, and that the horse and wagon were for the removal and harvesting of said crops, and that he, deponent, had sufficient confidence in said Hughes to justify him in leaving said property in said Hughes' charge until time of sale, it being understood at the time of levy, that a reasonable compensation

18

should be paid said Hughes for the removal and harvesting said crops, but that the subsequent release of said crops prevented any definite arrangement with regard to the exact compensation to be made to said Hughes for the removal of said crops.

Also the further affidavit of John Hughes, of date September 10th, 1859, which states that at the time of the aforesaid levy upon said personal property by said sheriff, mentioned in the foregoing affidavit, he asked the said sheriff to leave said horse and wagon in his possession, and for the use of the same, he, said Hughes, promised to harvest and remove the crops levied upon at a very reasonable compensation ; that said sheriff agreed to leave, and did leave the same in deponent's charge, to be delivered on demand on day of sale ; that subsequently the levy was withdrawn, for cause unknown to deponent and without his consent, and that he has been paid nothing,—but his services for tillage, harvesting, and removal would be reasonably worth fifty dollars.

The plaintiffs in error, to oppose the said motion, introduced the following affidavits :

The further affidavit of deputy sheriff Conlee, of date October 8th, 1859, which states, that he made the levy upon the execution in favor of plaintiffs in error, upon said personal property ; that no delivery bond was taken for the same ; that affiant resides at Scales Mound, in sight of the residence of said Hughes ; that when he levied thereon, he asked said Hughes for a delivery bond ; that said Hughes replied, that he would not ask any one to go on a bond for him, and said deponent might leave it or not, but that it would be forthcoming, if left with him, on day of sale ; that a portion of said property was of such a nature that it could not be taken possession of at that time ; that said wheat was afterwards harvested by said Hughes, but whether before or after the release of levy, deponent cannot state, nor what has become of the same ; that deponent has no knowledge in regard to said property since release of levy, except having seen the same in Hughes' possession, and hearing Hughes say he was in possession, and using said property ; that he does not know whether the other crops than the wheat are harvested or not, but that said Hughes is in possession of the land upon which crops were growing, and exercises acts of control and ownership over the same, as before the levy.

Also the affidavit of Ezekiel S. Smith, under date of September 21st, which states, that on the 14th day of August preceding, he had a conversation with said Hughes, at Scales Mound, where Hughes told him that the execution had been levied on the crops on the place in which he lived, and that if the officer should sell them, it would very much distress his family ; that

some other property levied upon belonged to his son, who had signed the note with him as security; that the property was in their possession, and had not been taken away by the officer; that on the next day he met said Hughes at Galena, who requested him to make some arrangement, if possible, so the property levied on by the sheriff might be released; deponent further told Hughes that he would see plaintiffs, and if no one else had purchased it for Mr. Streeter, would put the same upon the farm and release the personal property; Hughes requested the deponent to do so, as it would distress his family to lose the crops, and as he could not work much, his family would suffer; deponent returned to Chicago, purchased the judgment for Mr. Streeter, pursuant to the request, and notified Hughes, and on the 18th day of August then next, deponent directed the sheriff to release personal property as Hughes desired, and levy upon the real estate, which was then done.

Upon this affidavit was indorsed the following stipulation:

The said plaintiffs hereby stipulate and agree to bid for the land levied upon in this cause, the full amount of the judgment and costs, in favor of Smith, Pollard & Co., above the redemption money.

SMITH & DEWEY,

*September 21st,* 1859. Plaintiffs' Attorneys.

The defendant, to maintain further his issue, read in evidence a further affidavit of John Hughes, under date of October 15th, 1859, who testified that his attorneys have furnished him with a copy of an affidavit filed in said suit by E. S. Smith, attorney for plaintiffs; that he has carefully examined the same, and says that it is true that said Smith was at Scales Mound on or about the 14th day of August; that it is also true, as he believes, that said Smith directed the sheriff to release the levy upon the personal property and to levy upon the real estate, but that the said affidavit, with the exception of the above facts, is unqualifiedly and absolutely false; that he had but few moments conversation with said Smith, who inquired what judgments were against him, and deponent told him of the one in favor of Smith, Pollard & Co., upon which he had turned out his crops to satisfy the same; that he never said the sale of said crops would distress him, or any other remark which by any means could be so understood by said Smith; that said Smith represented to deponent that if he would confess judgment in his favor upon two notes of this deponent, which had been long before paid and settled by deponent, and which said Smith had unlawfully detained, that he, said Smith, would give him three years to redeem the said real estate from said fictitious judgment. Deponent then denies, specifically, each statement of conversation between himself and said Smith, as detailed in Smith's affidavit;

deponent further states, that all the last foregoing alleged conversation could not have taken place, as he purposely avoided said Smith after his dishonest propositions in regard to said fictitious judgment.

Also the affidavit of William R. Rowley, of same date, who testified that he is clerk of the Circuit Court; been a resident of the county fifteen years; is well acquainted with said John Hughes; that to his knowledge said Hughes' character for truth and veracity has never been questioned, and deponent would believe his statement under oath or otherwise.

Also the further affidavit of Thomas J. Manpin, of same date, who testified: is well acquainted with said John Hughes; has known him about ten years; has entire confidence in his veracity, and firmly believes said Hughes could not be induced to make any misstatement; that his character as a man of his word has never been questioned in the community where he resides; that deponent has resided at Scales Mound more than ten years.

Also the affidavit of Richard Seal, of same date, who testifies that he is clerk of the Circuit Court of Jo Daviess county; has been a resident of the county for twenty-two years; is well acquainted with said Hughes; that the character of said Hughes for truth and veracity has never been questioned to his, deponent's, knowledge, and that deponent would give full credit to what he said under oath or otherwise.

The court, after hearing counsel, set aside said levy upon said real estate, and said plaintiffs excepted, and appealed to this court.

.Smith & Dewey, for Plaintiffs in Error.

W. B. Scates, for Defendant in Error.

Walker, J. No rule is better settled, or more uniformly acquiesced in, than that a levy of personal property, sufficient in value to discharge the execution, is a satisfaction of the judgment. When the officer has seized property of the defendant, on execution, it is thereby appropriated by the law to its payment, and the officer is bound for its custody, and that it shall answer for the debt. To accomplish this, he has the power to remove the property and retain the possession, or place it in the hands of a custodian, unless the defendant shall execute a satisfactory delivery bond. And when the plaintiff has elected and made his levy, he has no power to release the levy and to have other property seized, unless it be with the consent of the defendant in execution. The law will not permit the creditor to use his judgment for purposes of annoyance, and the oppres-

sion of his debtor; and to permit him at his option, and as frequently as he may choose, to release one levy and make another, would confer a power which might be greatly abused. Nor has the officer making the levy, any power, on his own mere motion, to release a levy and seize other property. It is true, if such a release were made by agreement with the debtor, he would be estopped to complain, and would have no right to repudiate the agreement. Or if he were to possess himself of the property after the levy was made, and prevent the officer from applying it to the satisfaction of the execution, the officer would have the right to release the levy, and seize other property in its stead. Where a levy has been made, unless released by agreement of defendant, it can only be removed by a sale, or by an order of the court issuing the execution.

In this case, it is urged, that as the property was not removed from the defendant's custody by the officer, the levy was incomplete. The officer indorsed the levy on the execution, and nothing appears in the record to show that the levy was not legal and binding in every particular; and the evidence abundantly shows that it would have sold at public auction for enough to satisfy the execution. The sheriff does not intimate that he left any act, necessary to a complete levy, unperformed. He had the undoubted right, as the defendant in execution refused to give a delivery bond, to select the custodian of the property, and his having entrusted it to the defendant for safe custody, could in nowise affect the validity of the levy. The sheriff was liable for its production to answer the debt, or its return to the defendant, and he had, for that purpose, the right to entrust it to the defendant, or any one he might choose. If he saw proper to place it in the hands of the defendant, instead of any other bailee, the plaintiff had no right to complain. If it was not forthcoming, the sheriff would be liable to him for its loss, to the extent of its value, not exceeding the amount of his judgment.

The question is then presented, whether the evidence shows that this levy was released with the consent of the defendant. Smith, the attorney, testifies, that Hughes requested him to have the personal property released from this levy, which he did. On the other hand, Hughes positively denies that he ever made such a request, or ever at any time consented that the levy should be released. In this direct contradiction in the evidence, we may conclude that the fact is left in such doubt, that it is equally balanced; and as the plaintiff is required to establish the fact of consent, by a preponderance of evidence, he has failed to maintain his issue. This is clearly the rule, when there is not a preponderance of evidence to establish a fact.

And when two witnesses, of equal credit, make contradictory, positive statements, with equal opportunity of knowing the facts about which they testify, in the absence of a knowledge of their manner of testifying on the stand, we may well say there is no preponderance, and that the fact is not proved.

But in this case, three witnesses testify to an acquaintance with Hughes' character for many years, and that they would not hesitate to believe him under oath, or otherwise. In view of all these circumstances, we are unable to say that the preponderance of the evidence establishes the consent of Hughes to the release of the levy. And failing in this proof, the presumption is that the release was unauthorized, and the subsequent levy was irregular, and was properly set aside and vacated by the court.

The judgment of the court below is affirmed.

*Judgment affirmed.*