Lindley *v.* Kelley.

———————————•———————————

## LINDLEY *v.* KELLEY.

PRACTICE.—*Demurrer to Evidence.*—*Statement of Evidence.*—*Joinder in Demurrer.*—The party demurring to evidence should set out in full the evidence and demur thereto, and if the other party join in the demurrer, he admits that the evidence is properly set out. If the party offering the evidence denies the correctness of the statement thereof, he should refuse to join in the demurrer, and point out to the court the matters of omission or addition, and the court should require the demurring party to correctly state the evidence.

SAME.—*Assessment of Damages.*—Where there is a demurrer to evidence and a joinder therein, the court may have the damages assessed by the jury conditionally, or the jury may be discharged and a new jury called if the demurrer be overruled. The latter is the usual and the better practice.

SAME.—*Judgment.*—*Exception.*—*Assignment of Error.*—*Pleadings.*—*Conclusions from Evidence.*—If the demurrer be sustained, the judgment is like a final judgment on a successful demurrer to the complaint or answer. An exception to the ruling and an assignment of error thereon reserve the question; but defects in the pleadings cannot be taken advantage of to support the ruling, and the court will infer from the facts any conclusions the jury could reasonably have done.

SAME.—*Motion for New Trial.*—*In Arrest.*—If the demurrer be overruled and damages be assessed, a motion for a new trial may be made for error in such assessment, or in arrest of judgment for any defect in the pleadings sufficient in our practice to arrest judgment in other cases.

SAME.—*Bill of Exceptions.*—Where there is a demurrer to evidence, there is no bill of exceptions. Where a bill of exceptions is tendered, the evidence must go to the jury.

EXECUTION.—*Growing Crop.*—*Lien.*—Where an execution was issued upon

a judgment on the 31st day of May, and, on the 25th day of the next July, the execution defendant sold his interest in a field of corn growing upon his lands, which had been planted and cultivated by tenants, and of which, by contracts with the tenants, he was to receive a portion when the corn matured in the field at cutting-up time, but each party was to save and take care of his own share; and the sheriff levied upon the interest of the execution defendant on the 4th day of August thereafter;

*Held*, that the corn was subject to execution and sale as the property of the execution defendant; that the execution was a lien thereon from the time it came into the hands of the sheriff, and the subsequent sale of the corn by the execution defendant in no manner impaired such lien.

SAME.—*Return.—Additional Levy.*—Where there has been a levy upon real property under several executions, the statement in a return by the sheriff, as a reason for an additional levy on personal property, that he regarded the real property previously levied upon as insufficient to satisfy the execution, is no evidence of such being the fact. The return by the officer on the execution is evidence between the parties, only when the facts stated are official acts to be done in the usual course of proceeding. Matters of opinion or excuses for failure to perform a duty cannot be thus proved.

SAME.—*Satisfaction.—Presumption.*—In this State, a levy upon real estate of sufficient value to pay the judgment creates a presumption of satisfaction, and there exists no distinction between the effect of a levy upon real estate and that of a levy upon personal property. This presumption of satisfaction does not arise from a mere levy, but from proof that the property levied upon is sufficient to satisfy the execution.

APPEAL from the Hamilton Common Pleas.

BUSKIRK, J.—It becomes necessary for us to dispose of a preliminary question made by counsel for appellee, before we pass upon the merits of the controversy.

This was an action of replevin by the appellee against the appellant as sheriff, to try the rights of property in certain growing corn which had been levied upon as the property of James O'Brien by the sheriff, and which was claimed by the appellee. There was issue. The cause was submitted to a jury for trial. The appellee offered his evidence in support of the issues resting upon him. The appellant demurred to the evidence. The demurrer was overruled, to which ruling the appellant excepted. The demurrer set out the evidence which had been given to the jury by the appellee and then demured to the sufficiency of such evidence. Final judgment was rendered for the appellee, from which

the appellant appeals and assigns for error the overruling
of his demurrer to the evidence. The evidence is not put
in the record by a bill of exceptions. It is insisted by
counsel for the appellee, that the evidence cannot be put into
the record by setting it out in a demurrer to the evidence
and excepting to the ruling of the court upon such demur-
rer. It is conceded that such was the practice prior to our
code, but it is insisted that it has abrogated such practice,
and we are referred to sections 342, 343, 344, 345, 346, and
347, on pages 208 to 210, and sec. 559, on page 273, 2 G.
& H.

The sections referred to, except sec. 559, relate to exceptions,
and the mode of taking and placing them on the record.
Sections 345 and 346 are as follows:

"Sec. 345. Where the decision objected to is entered
on the record, and the grounds of objection appear in the
entry, the exception may be taken by the party causing to
be noted at the end of the decision that he excepts.

"Sec. 346. Where the decision is not entered on the
record, or the grounds of objection do not sufficiently
appear in the entry, the party excepting must reduce his
exceptions to writing, and present it to the judge for his
allowance and signature," etc.

The above quoted sections do not introduce any new prac-
tice, but simply re-enact the law as it has existed since bills
of exceptions were introduced by statute in England. Bills
of exceptions were not known to the common law, but were
introduced by 13 Edw. 1. ch. 31. Until that time, if the
judge decided wrongly upon any point of law, the suitor
was without remedy. *Bulkeley* v. *Butler,* 2 B. & C. 434.

It is provided by the above quoted sections of the code,
that when, in the progress of a cause, the decision objected
to is entered on the record, that is, when it is a necessary
part of the record, and the grounds of the objection appear
in the entry, the party may cause it to be noted at the end
of the decision that he excepts, and that such entry shall be
sufficient to reserve the question; but when the decision is

not entered on the record, or the grounds of the objection do not sufficiently appear in the entry, then the party cannot avail himself of any erroneous ruling unless the question is reserved and placed upon the record by a bill of exceptions.

Section 559 provides what shall constitute the transcript on appeal to this court, and how the several parts shall be made a part of the record. By that section all proper entries and all the papers relating to the cause are to be deemed parts of the record. This includes all the pleadings and the rulings of the court thereon, when presented by demurrer. All other matters must be made a part of the record by a bill of exceptions.

The complaint, answers, replies, demurrers, etc., must be filed by the clerk, and they constitute a part of the record, and when a transcript is made out the clerk is required to copy all these pleadings at large. The journal entry, by the clerk, of the filing of all pleadings is necessarily a part of the record. And where a demurrer is filed to a pleading, the demurrer, as we have said, is a natural part of the record; the entry, by the clerk, of its filing, is so also; and so is the action of the court in sustaining or overruling it. And, as the demurrer must assign causes, the ground of the decision of the court necessarily and sufficiently appears of record; and, consequently, no bill of exceptions is required. *Kesler* v. *Myers,* 41 Ind. 543; *Matlock* v. *Todd,* 19 Ind. 130.

There seems to be no room to doubt that the practice above indicated is the correct one when applied to a demurrer to the pleadings. In what does a demurrer to the evidence differ from a demurrer to the pleadings? A demurrer to a pleading admits the truth of the facts stated, while a demurrer to the evidence admits the truth of the facts proved. Both demurrers present questions of law for the decision of the court. As we have seen, the pleading demurred to, the demurrer, the ruling of the court thereon, and the exception of the party to such ruling, constitute a part of the record.

When a demurrer is filed to the evidence, the cause, if being tried by a jury, is withdrawn from the jury, and the question is referred to the court, whether, conceding the facts proved to be true, they are sufficient in law to support the action. The old practice was, where there was a demurrer to the evidence, for the court to order a note of the evidence to be taken, which was signed by counsel on both sides, and the demurrer was affixed to the *postea.* Buller Nisi Prius, 313; Tidd Pr. 866.

But the modern practice is for the party demurring to set out in full and at length the evidence in his demurrer. This practice has been recognized and sanctioned by this court, under our code of procedure. *Griggs* v. *Seeley*, 8 Ind. 264. In that case the demurrer sets out at length the evidence, and then demurs to it upon the ground that it was not sufficient to support the issue. There was a joinder in demurrer. In that case will be found a form of a demurrer to evidence and of the joinder, which has received the approval of this court.

The usual practice is for the opposite party to join in demurrer, but this is not necessary. By a joinder in demurrer the party admits that the evidence is properly set out. If the party offering the evidence is of the opinion that the evidence is not fully and correctly set out, he should refuse to join in demurrer, but should pray the judgment of the court that his adversary may not be admitted to his demurrer, until the evidence is fully and correctly set forth, and he should show to the court wherein the evidence is not fully and correctly set forth. The whole operation of entering the matter on the record and of conducting the demurrer to evidence is, and ought to be, under the direction and control of the judge sitting at the trial; and where it is objected that the evidence is not fully and correctly set forth, it is the duty of the judge to determine the question; and if the objection is found to be true, he should require the party demurring to strike out any matter improperly inserted or to insert any matter improperly omitted, until the demur-

rer speaks the truth. Tidd. Pr. 865; Buller Nisi Prius, 313.

Where there is a demurrer to evidence and a joinder, the court may have the damages assessed by the jury conditionally; or the jury may be discharged, leaving the damages to be assessed by another jury, should the demurrer be overruled. *Andrews* v. *Hammond*, 8 Blackf. 540. The latter is the usual and better practice.

If the demurrer is sustained to the evidence, the judgment is substantially the same as a final judgment on demurrer to the complaint or answer. The party should object to the sustaining of the demurrer, and the assignment of such ruling as error in this court presents for review whether the court erred in overruling the demurrer to the evidence.

Upon a demurrer to evidence, no advantage can be taken of any defect in the pleading, as a reason for sustaining it, but if the demurrer be overruled and a jury be summoned to assess damages, a motion may be made for a new trial for error occurring on the assessment of damages, or in arrest of judgment for any defect in pleadings which would warrant the arrest of judgment under our present system. Upon demurrer the court will infer from the evidence every conclusion the jury could reasonably have inferred from it.

In *Bulkeley* v. *Butler, supra*, BEST, J., after showing the origin and office of a bill of exceptions, proceeds to say : " But it may be asked what then is the office of a demurrer to evidence? It is this. If the party tenders a bill of exceptions, the evidence must be left to the jury ; but if the party does not wish that, he may withdraw it from their consideration by a demurrer. If, however, he does not demur, he must not be placed in a better situation than if he did. Now, by a demurrer to evidence, all the facts of which there is any evidence are admitted, and all conclusions which can fairly and logically be deduced from those facts."

According to the ruling in the above case, there cannot be a bill of exceptions where there is a demurrer to the evidence, for " when the party tenders a bill of exceptions, the

evidence must be left to the jury." This ruling is based upon sound principles, and is supported by authority. *Cole* v. *Driskell,* 1 Blackf. 16; *Dougherty* v. *Campbell,* 1 Blackf. 39; *Shields* v. *Arnold,* 1 Blackf. 109; *M'Creary* v. *Fike,* 2 Blackf. 374; *Doe* v. *Rue,* 4 Blackf. 263; *Andrews* v. *Hammond,* 8 Blackf. 540; *Griggs* v. *Seeley,* 8 Ind. 264; *Pawling* v. *The United States,* 4 Cranch, 219; *The Columbian Ins. Co.* v. *Catlett,* 12 Wheat. 383; *Gibson* v. *Hunter,* 2 H. Bl. 187.

We are very clearly of opinion that the evidence offered by the plaintiff below is properly in the record, and presents for our decision the question, whether such evidence was sufficient to support the issue resting upon the plaintiff.

The substantial facts as disclosed by the evidence are these:

The Indianapolis National Bank, on the 4th day of May, 1870, recovered, in the Hamilton Circuit Court, a judgment against James O'Brien as principal, and James M. Flanders as surety, in the sum of nine thousand nine hundred and seventy dollars and ninety-five cents, and the further sum of fourteen dollars and seventeen cents, costs of suit.

That on the 31st day of May, 1870, an execution on said judgment was in due form of law issued by the clerk of said court, directed to the sheriff of said county, commanding him, that of the property of said O'Brien as principal, and the said Flanders as surety, he cause to be made the principal, interest, and costs of such judgment; which was on the said day delivered to such sheriff.

From the return of the sheriff on such execution, it appears that on the same day the execution came to his hands, he demanded personal property whereon to levy, and was informed by O'Brien that he had no personal property subject to levy and sale upon the execution, and that the money must be made from the sale of his real estate, and directed a levy thereon.

That on the 3d day of June, 1870, the sheriff levied upon a large quantity of real estate belonging to O'Brien, subject to all liens and incumbrances thereon.

Lindley *v.* Kelley.

There was rendered, in the same court and on the same day that the judgment in favor of the Indianapolis National Bank was rendered, twelve other judgments against the said O'Brien, and executions were issued on all the judgments at the same time, and the levy heretofore mentioned, and those that will hereafter be named, were made upon all the executions. The total amount of such judgments was sixteen thousand and thirty-seven dollars and sixty-nine cents.

The real estate was offered for sale on the 7th of July, 1870, and was not sold for the want of bidders.

On the 21st of July, 1870, the sheriff levied on certain personal property of O'Brien. On the 4th day of August, 1870, the sheriff levied on the property in controversy.

On the 26th day of August, 1870, the sheriff levied upon certain other personal property. On the 19th day of October, 1870, the personal property levied upon, except that in controversy in this action, was sold, and, after the payment of costs and expenses, the sum of five hundred and nine dollars and forty-six cents was applied *pro rata* upon the several executions. On the 14th day of October, 1870, the real estate was again offered for sale, and was not sold for the want of bidders. Such real estate was again advertised for sale on the 16th day of December, 1870, but was not offered from the fact that the executions expired before the day of sale.

The sheriff, in his return upon the executions, assigns as a reason for levying upon the personal property, that he did not regard the real estate levied on as sufficient to satisfy the executions in his hands.

The appellee claims to be the owner of the corn in dispute, by purchase from James O'Brien, on the 25th day of July, 1870.

Two questions arise in the record and are argued by counsel:

1. It is claimed, by counsel for appellee, that O'Brien

did not have such a right to, or interest in, the corn as made it subject to levy and sale upon execution.

2. That the Sheriff having levied the executions upon nearly a thousand acres of land, and such land remaining unsold and undisposed of, the levy thereon amounted to a satisfaction of the execution, and that the sheriff possessed no power to levy upon the property in dispute, until it was demonstrated by an actual sale of the real estate, that it was insufficient to satisfy such executions.

The facts in reference to the ownership and possession of the corn in dispute are as follows:

The corn was growing upon the lands of O'Brien, and had been planted and cultivated by R. G. Walker and Willis Venable. Walker and Venable gave the following testimony as to the contracts between them and O'Brien. Walker said:

"I reside upon O'Brien's farm in Delaware township. I cultivated corn there in 1870. By the contract between myself and O'Brien, the division was to have been when the corn matured in the fall, at cutting-up time. Each party was to save and take care of his own half of the crop. The corn referred to was the crop of 1870, planted in the spring, at the usual time; the corn was to have been divided by rows of ten. I lived on farm and controlled part of the crop, and that I cultivated. I have been on farm three years."

Mr. Venable testified:

"Have resided on farm of O'Brien for year or two, part at Beck's station; have been there two years. I cultivated two pieces of corn on shares in 1870; there was in one piece twenty or twenty-five acres, in the other fourteen or fifteen acres. My interest in corn was one-half in part, three-fifths in part. For the year 1870 the crop was to have been divided in the fall, at cutting-up time, by rows of ten running clear across the field. Each party was to take care of and save his own part of the crop. I had nothing to do with corn after it was cultivated and divided. The large field Mr. O'Brien was to have half, and the balance two-fifths."

It is argued by counsel for appellee, that the title to the growing crop remains in the tenant so long as any thing remains to be done by him, or until the time arrives for the landlord to receive his share; and that while O'Brien had an interest in the growing corn, the farms and the corn were in the possession and under the control of his tenants, and that he had no right to enter until the time arrived for the division of the corn; and that as O'Brien had no right to enter, the sheriff had no such right, and hence could not levy and sell the corn; and in support of these positions reference is made to *Woodruff* v. *Adams*, 5 Blackf. 317, and *Chissom* v. *Hawkins*, 11 Ind. 316.

In *Woodruff* v. *Adams, supra*, it was held, that where the landlord was to receive his share of the crop on other premises than those let, his share was in the nature of rent, and until that was delivered, the exclusive ownership of the crop was in the raiser; but where the landlord was to receive his share of the crop standing in the field, on the premises let, he was jointly interested with the producer in the crop while it was growing and would have the right of entry.

In *Chissom* v. *Hawkins, supra*, the tenant agreed to pay as rent, for one hundred acres of tillable land and twenty-five acres of pasture land, one thousand seven hundred bushels of corn, which was to be husked and cribbed in good order.

The above case differs from the one under consideration in several particulars. In that case the tenant was to husk and crib the corn, which was to be delivered as rent and not as a share of the product raised. There a delivery was contracted for. In the case under consideration no delivery was contracted for or necessary. WORDEN, J., in delivering the opinion of the court, says: "It may be observed that, by the terms of the lease, Wright was to pay as rent one thousand seven hundred bushels of corn; but not necessarily the specific corn that he might raise on the premises. That amount he was to pay, whether he raised it or not, and the payment of that amount, either in corn raised on the

premises, or otherwise procured, would have discharged his contract."

It is very obvious that under such a contract the landlord would have no joint interest with the tenant in the growing crop. The tenant would be the exclusive owner of the crop, until it was secured and the rent was delivered to the landlord.

If the corn in controversy was subject to sale upon the executions, then they created a lien on the growing corn from the time they came to the hands of the sheriff, and a sale of the corn could not divest such lien.

The title of the appellee depends upon the validity of his purchase from O'Brien, and we are unable to see how O'Brien could vest in his vendee a good title, and yet not possess such title to the corn as would make it subject to the executions. Counsel for the appellee attempt to explain the apparent inconsistency by the argument that a growing timber tree is the subject of a contract, but cannot be levied on by an attachment or execution, and that growing fruit in an orchard can not be levied upon and sold upon execution, but that such fruit may be sold by the owner, and a contract for its sale can be enforced, and reference is made to *Conklin* v. *Foster*, 57 Ill. 104, published in April No. of Law Reg. for 1873, p. 257. The only point decided in that case, having any application to the one under consideration, is, that " a sheriff has no power to levy on and sell houses, timber or ornamental trees, and sever them from the fee."

It appears from the abstract published in the Register that the case arose under the homestead law, and the question which seems to be involved was, whether houses erected and trees planted by a tenant for a term of years were exempted from sale under said law, and it was held that they were. The case has but little, if any, application to the present case.

It was decided by this court, in *Northern* v. *The State, ex rel. Lathrop*, 1 Ind. 113, that growing crops, raised annually by labor, are the subject of sale as personal property, before maturity, and that their sale does not necessarily involve an interest in the realty requiring a written agreement.

The distinction between the annual productions of the earth which are produced by annual planting, cultivation, and labor and such as are not, is stated with great clearness and accuracy by Mr. Chief Justice ROBERTSON, in *Craddock* v. *Riddlesbarger*, 2 Dana, 205, where he says: "Although such annual productions or fruits of the earth as clover, timothy, spontaneous grasses, apples, pears, peaches, cherries, etc., are considered as incidents to the land in which they are nourished, and are, therefore, not personal, nevertheless, every thing produced from the earth by annual planting, cultivation and labor, and which is therefore denominated, for the sake of contradistinction, *fructus industriæ*, is deemed personal and may be sold, as personalty, even whilst growing and immature. And the purchaser of such an article in such a growing state will have the consequential right of ingress and egress, for purposes of cultivation, preservation and removal, though he will have acquired no interest in the land itself, nor any other control or dominion over it, than such as may be necessarily incident to his right to the growing *fructus*. *Parham* v. *Thompson*, 2 J. J. Mar. 159, and the authorities therein cited; and also *Eaton* v. *Southby*, Willes, 131. The authorities leave no pretext for doubting that growing corn is a chattel, and, as such, may be sold by the owner, or taken by an officer in virtue of a process of *fieri facias*. The only doubt which has been intimated, is as to the proper time of selling under an execution. But, though some have expressed the opinion, that the sale should be postponed until after the corn shall have been matured and severed from the land, and though such a course might often be advantageous to all parties concerned, still it seems to us that, prior to an act of the last legislature, the law conceded the right to sell the corn in the condition in which it was when the execution was levied on it. The right to levy implies the right to sell, as soon as legal notice can be published of the time and place of sale, and of the thing to be sold."

We think that the corn in dispute was subject to levy and

sale as the property of O'Brien ; that the executions created a lien thereon from the time they came to the hands of the sheriff; and that the subsequent sale of the corn, by O'Brien to the appellee, in no manner impaired or destroyed such lien.

It remains to inquire whether the second position assumed by counsel for appellee is tenable.

It was shown by the evidence, to which a demurrer was overruled, that there were thirteen judgments against O'Brien, amounting in the aggregate to sixteen thousand and thirty-seven dollars and sixty-nine cents ; that executions were issued upon all of said judgments and placed in the hands of the sheriff; and that he levied such executions upon nearly a thousand acres of land.

There was no proof as to the value of the lands so levied on.   It is true that the sheriff in his return states, as a reason for levying upon personal property, that he did not regard the levy upon the real estate sufficient to satisfy the executions in his hands, but we are of opinion that, while the return of the sheriff is evidence, the reasons which operated on his mind in inducing him to make the levy upon personal property cannot be regarded as evidence of the truth of the reason stated.

The naked question is therefore presented, whether a levy upon a large body of land, without any proof as to the value of such land raises the presumptions that the land so levied on was of sufficient value to satisfy the executions, and that such judgments are to be deemed satisfied until the insufficiency of such land is made manifest by a sale and return.

It is well settled by repeated decisions of this court, that a levy upon lands or goods, of sufficient value to pay the judgment upon which the execution issued, raises the presumption that the judgment is satisfied ; and another levy by virtue of the same writ cannot be made, until the property first levied on has been legally disposed of, and its insufficiency shown by an actual sale. *Lasselle* v. *Moore*, 1 Blackf. 226; *M'Intosh* v. *Chew*, 1 Blackf. 289; *Miller* v. *Ashton*,

Blackf. 29; *Stewart* v. *Nunemaker,* 2 Ind. 47; *Doe* v. *Dutton,* 2 Ind. 309; *Law* v. *Smith,* 4 Ind. 56; *Barret* v. *Thompson,* 5 Ind. 457.

The return of an officer on an execution can only be evidence of the facts as between the parties, when the facts stated are official acts done in the ordinary and usual course of proceedings. Matters of opinion or excuse for failure to perform a duty cannot be made evidence by stating them in the return, but must be proved on trial. Crocker Sheriffs, 32, sec. 47; Gwynne Sheriffs, 476; *Holderman* v. *Brasfield,* 6 Litt. 271; *Bruce* v. *Dyall,* 5 T. B. Mon. 125; *Williams* v. *Cheesebrough,* 4 Conn. 356; *Denton* v. *Livingston,* 9 Johns. 96.

In *M'Intosh* v. *Chew, supra,* it was held that a levy raised the presumption of satisfaction, and that the plaintiff was barred from taking any other steps, until the property levied on was clearly and legally shown to be insufficient.

It is very manifest to us that the learned judge who delivered the opinion of the court in that case did not intend to hold that a mere levy, without reference to the value of the property levied on, raised a presumption of satisfaction. The cases referred to lay down the proposition, that a levy upon property sufficient to pay the debt raises the presumption of satisfaction. Such is the rule as laid down in all the other decisions of this court, and by all the text writers and adjudged cases in this country and in England. We have found no other authority which holds that a mere levy, without reference to the sufficiency of the property to pay the debt, raises a presumption of satisfaction. None of the decisions assumes that a levy produces any absolute satisfaction. It is a satisfaction *sub modo.* So long as the property remains in legal custody, the other remedies of the creditor will be suspended. He cannot levy on other property with the same writ, nor can he have a new execution against the person or property of the debtor, nor maintain an action on the judgment, nor use it for the purpose of becoming a redeeming creditor.

Inasmuch as the appellee bases his right upon the theory that the lands levied upon were of sufficient value to pay the judgments against O'Brien, he assumed the burden of showing by sufficient proof that they were of such value. The presumption of satisfaction does not arise from a mere levy, but from a sufficient levy, and as the appellee wholly failed to prove the value of the lands levied on, no presumption could be indulged that they were of such value. By the demurrer to the evidence the appellant admitted all the facts proved, and all the conclusions which could be fairly and logically deduced from such facts. The court could not fairly and logically deduce from the fact of the levy the conclusion that the property levied on was of sufficient value to pay all the judgments.

From the fact that there is some confusion in the books and some uncertainty as to the effect of a levy upon property, we are induced to make an extended quotation from the recent decision of the Supreme Court of the United States, in the case of *United States* v. *Dashiel*, 3 Wal. 688.

CLIFFORD, J., speaking for the court, says: " Actual satisfaction beyond the amount specified in the return of the marshal cannot be pretended, but the theory is, that the levy of the execution in the manner stated affords conclusive evidence that the whole amount was paid, and it must be admitted that one or two of the decided cases referred to appear to give some countenance to that view of the law; that is, they assert the general doctrine, that the levy of an execution on personal property sufficient to satisfy the execution operates *per se* as an extinguishment of the judgment. None of those cases, however, afford any support to the theory that any such effect will flow from the issuing of an execution, and the levying of the same upon land. On the contrary, the rule is well settled, that in the latter case no such presumption arises, because the judgment debtor sustains no loss by the mere levy of the execution, and the creditor gains nothing beyond what he already had by the

lien of his judgment. Reason given for the distinction is that the land in the case supposed remains in the possession of the defendant, and he continues to receive and enjoy the rents and profits. Many qualifications also exist to the general rule as applied to the levy of an execution upon the goods of the judgment debtor, as might be illustrated and enforced by numerous decided cases. Where the goods seized are taken out of the possession of the debtor, and they are sufficient to satisfy the execution, it is doubtless true, that if the marshal or sheriff wastes the goods, or they are lost or destroyed by the negligence or fault of the officer, or if he misapplies the proceeds of the sale, or retains the goods and does not return the execution, the debtor is discharged; but if the levy is overreached by a prior lien, or is abandoned at the request of the debtor or for his benefit, or is defeated by his misconduct, the levy is not a satisfaction of the judgment. Rightly understood, the presumption is only a *prima facie* one in any case, and the whole extent of the rule is that the judgment is satisfied when the execution has been so used as to change the title of the goods, or in some way to deprive the debtor of his property. When the property is lost to the debtor in consequence of the legal measures which the creditor has pursued, the debt, says BRONSON, C. J., is gone, although the creditor may not have been paid. Under these circumstances the creditor must take his remedy against the officer, and if there be no such remedy he must bear the loss."

It will be observed that in the above opinion a distinction is drawn between the effect of a levy upon personal property and real estate. The same distinction is recognized in the most of the states of the Union, as is shown by the authorities hereafter referred to. But in this State no such a distinction has been made. The rule has existed in this State from the organization of the State, that a levy upon real estate of sufficient value to pay the judgment creates a pre-

sumption of satisfaction; and while it is to be desired that the decisions of this court should be in accord with the decisions of the Federal and other state courts, we do not feel called upon to change a rule that has existed from the organization of this court down to the present time. It has become a rule of property, and the doctrine of *stare decisis* applies with great force.

In the investigation of the questions involved in this case, we have examined the following authorities, and refer to them in support of the views expressed, and for the convenience of future reference: *Ladd* v. *Blunt*, 4 Mass. 402; *Livingston* v. *Bishop*, 1 Johns. 290; *Denton* v. *Livingston*, 9 Johns. 96; *Reed* v. *Pruyn*, 7 Johns. 426; *Hoyt* v. *Hudson*, 12 Johns. 207; *Shepard* v. *Rowe*, 14 Wend. 260; *People* v. *Hopson*, 1 Denio, 574; *Ostrander* v. *Walter*, 2 Hill N. Y. 329; *Green* v. *Burke*, 23 Wend. 490; *Taylor* v. *Ranney*, 4 Hill N. Y. 619; *Green* v. *Bailey*, 3 N. H. 33; *Burnham* v. *Coffin*, 8 N. H. 114; *Thomas* v. *Platts*, 43 N. H. 629; *Baxter* v. *Tucker*, 1 D. Chip. 353; *Royce's Adm'r* v. *Strong*, 11 Vt. 248; *Hyde* v. *Taylor*, 19 Vt. 599; *Dimick* v. *Brooks*, 21 Vt. 569; *Pratt* v. *Jones*, 22 Vt. 341; *Beazley* v. *Prentiss*, 13 Sm. & M. 97; *Patterson* v. *Swan*, 9 S. & R. 16; *Deloach* v. *Wilcoxson*, 6 Ga. 410; *Reynolds* v. *Rogers*, 5 Ohio, 170; 1 Salk. 318; *Clerk* v. *Withers*, Ld. Raym. 1072; 6 Mod. 290; Tidd Pr. 1019; Freeman Judgments, 393; *Trapnall* v. *Richardson*, 13 Ark. 543; *Ex parte Lawrence*, 4 Cow. 417; *Wood* v. *Torrey*, 6 Wend. 562; *Carr* v. *Weld*, 4 C. E. Green Ch. 319; *Troup* v. *Wood*, 4 Johns. Ch. 228; *People* v. *Chisholm*, 8 Cal. 29; *First National Bank of Hastings* v. *Rogers*, 13 Minn. 407; S. C., 15 Minn. 381; *Banta* v. *McClennan*, 1 McCarter, 120; *Hoard* v. *Wilcox*, 47 Penn. St. 51; *Curtis* v. *Root*, 28 Ill. 367; *Mulford* v. *Estudillo*, 32 Cal. 131; *Thomas' Ex'r* v. *Cleveland*, 33 Mo. 126; *Smith* v. *Hughes*, 24 Ill. 270.

We are of opinion that the court erred in overruling the demurrer to the evidence, for which error the judgment must be reversed.

The judgment is reversed, with costs; and the cause is

remanded, with directions to the court below to sustain the demurrer to the evidence.

*D. Moss* and *F. M. Trissal,* for appellant.

*J. O'Brien* and *T. J. Kane,* for appellee.