## HOLMES v. THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY ET AL.

PRACTICE.—*Special and General Finding.*—A finding which purports to be special, but which is not made at the request of any of the parties, can only be regarded as a general finding.

SAME.—*Assignment of Error.*—An assignment of error in rendering judgment for a defendant, and against the plaintiff, presents no question to the Supreme Court.

SAME.—*Motion for New Trial.*—A motion for a new trial on the ground of the improper admission or exclusion of evidence, without designating the evidence admitted or excluded, is too indefinite.

SAME.—That the court erred in the conclusions of law stated upon the facts found, is no ground for a new trial.

SAME.—*Venire de Novo.*—That the court did not find its conclusions of law upon the facts found, is no reason for awarding a *venire de novo*.

SAME.—*Demurrer to Evidence.*—*Assessment of Damages.*—Damages need not necessarily be assessed before a decision on the question of law presented by a demurrer to evidence, but may be assessed afterward, if necessary.

SAME.—*Demurrer to Evidence May be Withdrawn.*—After a party has filed a demurrer to evidence, and before any joinder therein, it is within the discretion of the court to permit the demurrer to be withdrawn.

SAME.—*Argumentative General Denial.*—The sustaining of a demurrer to a paragraph of answer which is merely an argumentative denial, the general denial being also pleaded, is not an available error.

From the Allen Circuit Court.

*L. M. Ninde* and *R. S. Taylor*, for appellant.

*W. H. Coombs, J. Morris*, and *R. C. Bell*, for appellees.

DOWNEY, J.—Holmes brought his action against the life insurance company, on a policy dated the 14th day of June, 1865, the material facts of which, so far as this action is concerned, are as follows:

" This policy of assurance witnesseth, that the Phœnix Mutual Life Insurance Company, in consideration of the representations made to them in the application for this policy, and of the sum of seventy-six dollars to them paid by Joshua Holmes, and of the annual premium of seventy-six dollars. to be paid on or before the 10th day of June in every year during the continuance of this policy, do assure the life of

Alphonso Benton, of Fort Wayne, in the county of Allen, State of Indiana, in the amount of two thousand dollars, for the term of his natural life.    And the company hereby promise and agree, to and with the said assured, well and truly to pay or cause to be paid the sum assured to the said assured, his executors, administrators, and assigns, within ninety days after due notice and proof of interest, if assigned or held as security, and of the death of the said Alphonso Benton, deducting therefrom all indebtedness of the party to the company."

Then follows the usual condition against travelling without the consent of the company, engaging in hazardous employments, intemperance, and death by suicide, capital punishment, or duelling.

" And it is also understood and agreed to be the true intent and meaning hereof, that if the proposals, answers, and declarations made by the said Joshua Holmes, and bearing date," etc., " shall be found untrue in any respect, then and in such cases this policy shall be null and void; or in case the said assured shall not pay the said annual premiums on or before the several days hereinbefore mentioned for the payment thereof, then and in every such case the said company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall cease and determine."

It is alleged in the complaint, that Alphonso Benton departed this life in June, 1869.    The action was commenced in February, 1871.

On her application, Harriet Benton, widow of Alphonso Benton, was made a party to the action, and filed an answer and cross complaint, alleging, substantially, that she admits the making of the policy of insurance ; that it was in the hands of the plaintiff at the death of Alphonso Benton ; that the plaintiff had made the necessary proof of the death of said Alphonso, but alleging that the plaintiff should not have judgment for the amount of said policy, because she says that while said policy was so issued in plaintiff's name, and was at the time of the death of said Alphonso in the possession of the plaintiff, yet the plaintiff has no interest in or right or claim

to said policy, for the reason that, on the 10th day of June, 1865, in consideration of the payment of a certain premium by said Alphonso, the said company made and delivered to said Alphonso said policy of insurance upon his life; that he directed the same to be issued in the name of the plaintiff; that the plaintiff was not then a creditor of Benton, but he and Benton had business transactions from time to time, and said Benton intended that while said policy should be for the benefit of his wife in the event of his death, yet by having it so made out in the name of the plaintiff he would be able to use it as collateral security in case he should at any time need the indorsement or signature of said Holmes; that when the policy was issued, said Benton presented and delivered the same to her, she being then his wife and now his widow; that at the designated dates, in 1866, 1867, 1868, and 1869, Alphonso Benton paid the annual premium and received the renewal receipt or certificate thereof from the company; that in July, 1869, the plaintiff became surety for said Benton on a note to one Swayne for three hundred dollars, and in 1870 indorsed a note in bank for him for six hundred dollars.

It is further alleged, that at that time Benton was confined to his room from sickness, of which he afterward died; that he directed the policy to be brought to him, as well as the several certificates of renewal, and handed them to the said plaintiff, and directed him to hold the same as collateral security for the liability assumed by him as surety and indorser for him; and further directed that in the event he should be compelled to pay said notes, and he, said Benton, should die, he, the plaintiff, should collect said policy, and, after reimbursing himself, should return the residue to his, said Benton's, wife, the said policy having been taken out and intended for her benefit; but if said debts should be otherwise paid, that he should transfer and hand over to her the policy and renewal certificates; to all of which the plaintiff then and there agreed.

It is then alleged that the company, on the 10th day of June, 1870, in consideration of forty-seven dollars and twelve cents

Holmes v. The Phœnix Mutual Life Ins. Co. *et al.*

paid by said Alphonso Benton, executed to him a further certificate of renewal for one year, and that, by said policy of insurance and said several certificates of renewal thereof, the said insurance company insured the life of said Benton in the sum of two thousand dollars. She further alleges that at the time of the issuing of said policy of insurance and the several certificates of renewal, except the last, she had and held the possession of the same, and so held them up to the time said Benton so handed them to the plaintiff as collateral, as hereinbefore stated, and said plaintiff had no knowledge of their existence up to that time; that, in 1870, said Benton fully paid said note in bank, so endorsed by the plaintiff, for six hundred dollars, when the same became due, and thereby released and relieved said plaintiff from all liability by reason thereof; that said Benton died in 1870; that at the time of the issuing of said policy and at the time of his death, she, as his wife, had an insurable interest in his life, and that after his death, in 1870, she fully paid off the note to said Swayne, and thereby released the plaintiff from all liability thereon, yet the plaintiff wrongfully withholds from her the said policy and certificates, and refuses to deliver the same to her; that she and her husband have duly performed and fulfilled all the conditions of said insurance on their part; that no part of the amount of the policy has been paid, and that said sum of two thousand dollars is now due to her from said company; that the plaintiff has no interest in said policy and certificates, and now withholds the same from her with the fraudulent purpose of cheating and defrauding her by collecting the same and appropriating the proceeds to his own use; wherefore, etc.

The insurance company answered the original and the cross complaint, admitting the making of the policy and the renewal certificates as alleged, and stating that it had no knowledge of the business relations between Holmes and Benton, and that it had always been ready to pay the amount of the policy to any person legally authorized to receive the same, and praying an order directing to whom they should make payment.

The plaintiff demurred to the answer and cross complaint of Harriet Benton, on the ground that the same did not state facts sufficient to constitute a defence, or to entitle her to recover on her cross complaint, and the demurrer was overruled.

The plaintiff answered the cross complaint of Harriet Benton in an answer of three paragraphs :

. 1. A general denial.

2. That on the 15th day of October, 1863, the plaintiff was the lessee of the Pittsburgh, Fort Wayne, and Chicago Stock Yards, at Fort Wayne, and entitled to take possession of the same, and said Alphonso Benton was then a laborer in said stock yards, in the city of Chicago, and applied to the plaintiff to release his interest in said stock yards first above mentioned, and to use his influence to procure a lease of the same for said Benton, and assist him with the plaintiff's credit to run the same, and that he, said Benton, would pay the plaintiff one thousand dollars therefor ; that plaintiff released said company from his said lease, promoted and assisted Benton, who procured a lease thereof from said company, and held the same till the time of his death ; that he endorsed the paper of said Benton from time to time ; that the policy of insurance was procured to be issued to the plaintiff by said Benton, to secure the plaintiff in the payment of said money, and to compensate him for the time, trouble, and risk always taken and run by him in and about the contract and numerous endorsements so made by the plaintiff for said Benton, which said policy was, when issued, duly delivered by said Benton to plaintiff, with the understanding and agreement that he, the said Benton, would continue to pay up the accruing premiums on the same 'for the use and benefit of the plaintiff; for the convenience of making said payments, the plaintiff handed said policy to said Benton to hold for him ; that the policy was so held by him until the 1st day of June, 1870, when it was handed over by him to the plaintiff, absolutely for his own use.

3. That said Alphonso Benton, at the time said policy was issued, was under obligation to the plaintiff for divers indorse-

ments and accommodations theretofore rendered and done by the plaintiff for him, said Benton, and it was then and there agreed by and between said Benton and plaintiff to be continued from time to time as the same might be convenient or necessary for the business of said Benton, and which agreement to continue to endorse the paper of said Benton the plaintiff faithfully performed by endorsing all the paper which said Benton applied to him to endorse up to his death; and for and in consideration of the premises, the said Benton caused the said policy to issue, and delivered the same to the plaintiff, at the time, for his own use, and agreed to continue to pay the accruing premiums on the same, and the plaintiff deposited the said policy with said Benton for his convenience in making said payments, who kept the same until a short time before his death, when the same was delivered over to the plaintiff, for his own use; wherefore, etc.

The defendant Harriet Benton demurred to the second and third paragraphs of the answer of the plaintiff to her cross complaint, and the demurrer was overruled as to the second, and sustained to the third.

The record contains a demurrer to the evidence, which purports to have been filed by the defendant, but which was afterward, and before any joinder therein, withdrawn by leave of the court.

Following this entry is a reply to the second paragraph of the answer of the plaintiff to the cross complaint, consisting of a general denial thereof.

There was a trial by the court and a finding in favor of Harriet Benton, against the insurance company, for two thousand dollars, and also against the claim of the plaintiff to the proceeds of the policy. The finding is an attempted special finding, but was not made at the request of any of the parties, and cannot be regarded as a legal special finding.

The plaintiff moved the court to award a *venire de novo,* which was refused. He then excepted to the conclusions of law, and also moved the court to grant him a new trial. This motion the court also overruled. He also moved for judgment

in his favor on the special findings, which was also refused, and final judgment rendered according to the finding.

We will consider the errors as they are assigned and numbered:

It is alleged that the court erred in rendering judgment for Harriet Benton and against the plaintiff. This assignment presents no question to this court. If the verdict of the jury or the finding of the court is in favor of a party, and it is not set aside by granting a new trial, or in some other legal manner, judgment follows as a necessary consequence. *Fall* v. *Hazelrigg*, 45 Ind. 576 ; *Sanxay* v. *Hunger*, 42 Ind. 44, and cases cited.

The second alleged error is, that the court improperly refused to render judgment for the appellant on the special finding of the court. We have already said that there was no legal and proper special finding. We have often decided that when an attempted special finding falls short of the statutory requirements, it can be regarded as a general finding only. *Conwell* v. *Clifford*, 45 Ind. 392, and cases cited.

The third alleged error relates to the refusal of the court to grant a new trial. The causes stated in the motion for a new trial are as follows:

" 1. Because the findings of the court are contrary to the evidence, and not supported by the evidence.

" 2. Because the findings of the court are contrary to law.

" 3. Because the court erred in the admission of improper testimony offered by the defendant Benton, and in the exclusion of proper testimony offered by the plaintiff; to which erroneous rulings the plaintiff at the time excepted.

" 4. Because the court erred in the conclusions of law stated upon said facts."

The evidence shows that Alphonso Benton paid all the premiums for the insurance ; that all the debts for which the appellant was liable as surety or endorser of Benton were paid, without any damnification of the appellant, and, we think, fairly and fully warranted the finding of the court. Indeed, it seems to us, from the facts disclosed in the evidence, that

the claim of the appellant to the proceeds of the policy is destitute of any merit whatever. We do not see any respect in which the finding is contrary to law, as alleged in the second cause for a new trial.

The third ground for a new trial is not sufficiently definite to enable us to know the action of the circuit court to which it relates. Causes for a new trial, in this form, have been repeatedly adjudged insufficient. So often has this been ruled, and the reasons for the rule stated, that it is unnecessary longer to refer to the cases.

The fourth reason for a new trial is, that the court erred in the conclusions of law stated upon the facts. This is no ground for a new trial. *Smith* v. *Davidson,* 45 Ind. 396, and cases cited.

The court did not err in refusing a new trial.

The fourth alleged error is the refusal of the court to award a *venire facias de novo.* The grounds of the motion were:

1. That the court had not found all the facts in issue in the cause.

2. Had not found the facts in issue, but only the evidence of such facts.

3. Did not find its conclusions of law upon the facts so found.

4. Had not made a conditional assessment of the damages for or in favor of the plaintiff.

As already appears, the insurance company admitted its liability to pay the money. The substantial and material question in the case was, whether the plaintiff was entitled to the money, or whether Mrs. Benton should recover it. Treating the finding of the court as a general finding for Mrs. Benton, on her cross complaint, we think it was full and complete, and fully justified the judgment which was rendered in her favor.

The third ground of the motion, if true, was no reason for awarding a *venire de novo.*

The fourth ground of the motion, that the court had not

made a conditional assessment of the damages for or in favor of the plaintiff, was no ground, in any view of the case, for awarding the new *venire*. If this ground has reference to the demurrer to the evidence, which was filed and afterward withdrawn, it cannot be sustained. If the demurrer should not have been withdrawn, still the damages need not necessarily be assessed before a decision on the question of law presented by the demurrer, but may be assessed afterward, if necessary. *Lindley* v. *Kelley*, 42 Ind. 294.

The fifth alleged error is, that the court erred in the conclusions of law. As there was no valid special finding by the court, no question can be presented with reference to the conclusions of law.

The sixth, seventh, and eighth alleged errors may be considered together. They are as follows:

"6. The court erred in sustaining the motion of the defendants below for leave to withdraw their demurrer to the evidence.

"7. The court erred in refusing the plaintiff below leave to join in the demurrer to the evidence.

"8. The court erred in refusing to pronounce judgment upon the demurrer of the defendants to the plaintiff's evidence."

These assignments present the question whether the court may, after a party has filed a demurrer to evidence and before any joinder therein by the other, permit such party to withdraw the demurrer. No ground is shown in the bill of exceptions either for or against the allowance of the application in this case. We think the allowance of such motion was a matter within the discretion of the court, and there does not appear to have been any abuse of the discretion of the court in this case.

The ninth alleged error is the sustaining of the demurrer to the third paragraph of the plaintiff's answer to the cross complaint of the defendant Harriet Benton.

We have already set forth the third paragraph of the answer in question, and we have come to the conclusion that it amounts

Holmes *v.* The Phœnix Mutual Life Ins. Co. *et al.*

to no more than an argumentative denial of the claim set up by Mrs. Benton in her cross complaint, and that, therefore, there was no available error in sustaining the demurrer thereto.

The tenth and last alleged error is the ruling of the court in overruling the demurrer of the plaintiff to the cross complaint of Harriet Benton. The cross complaint is already set forth in this opinion. No objection to it is pointed out by counsel for the appellant, and we have not discovered any.

The judgment is affirmed, with costs.